THE RODNEY HUNT MACHINE COMPANY, RESPONDENT, *v.* JAMES M. STEWART AND WILLIAM R. STEWART, APPELLANTS.

*Conditional contract for the sale of chattels — mortgage of the chattels by the conditional vendee — liability of the vendee for so doing — chapter 315 of 1884 and chapter 225 of 1888 — joint liability for conversion — demand.*

Certain water-wheels were manufactured by the Rodney Hunt Machine Company under an order dated April 11, 1887, directing their manufacture, which order further provided as follows: "It is agreed that the above-specified articles are to remain the property and subject to the order of the Rodney Hunt Machine Co. until paid for in full, and that if promissory notes are given for said sum, no payment thereof or thereon shall divest the title of the said Rodney Hunt Machine Co. until all said promissory notes are paid in full."

The water-wheels were delivered to the New York Pulp Company under this contract, and that company thereafter, and on the 1st day of June, 1888, executed a mortgage to secure the sum of $3,500 borrowed of one Mary Matilda Stewart, which covered the mills and real property of the company and "also all the machinery, water-wheels," etc.

On the 11th of March, 1889, the New York Pulp Company executed to said Stewart a chattel mortgage upon the water-wheels in question to secure a debt of $15,000 owing by it.

The real-estate mortgage was foreclosed and a sale of the premises covered thereby was made on the 4th day of May, 1889, to one James M. Stewart. Thereupon an action was brought by the Rodney Hunt Machine Company against the New York Pulp Company, in which it was charged in the complaint that the Pulp Company was guilty of a conversion of the water-wheels.

*Held,* that the action was properly brought.

That whether the contract constituted the Pulp Company a bailee of the water-wheels within the strict and technical meaning of that word, or whether it was a conditional purchaser, it had no right to dispose of the property by giving the mortgage in question.

That a conditional purchaser of property under an executory contract to sell, not performed by him, takes no title which he can convey or transfer, and a transfer or sale by him of the property is a wrongful act, amounting to a conversion of the property.

The contract above set forth was, on the 9th of April, 1887, filed in the proper town clerk's office, but was never thereafter refiled, and it was claimed by the Pulp Company that the Machine Company, by failing to refile the contract within a year, as required by chapter 315 of the Laws of 1884, as amended by chapter 225 of the Laws of 1888, had lost its right to the water-wheels as against a *bona fide* purchaser or mortgagee, and that, as it had lost its right through its own neglect, no right of action arose against the Pulp Company by reason of its having mortgaged the water-wheels.

*Held,* that while the conditional vendor might be precluded by the provisions of these acts from following his property and recovering it from a *bona fide* purchaser or mortgagee in case of a failure to file or refile the conditional contract of sale within the time prescribed by these acts, yet the obligation of the conditional vendee to the vendor was not changed by these acts of the legislature, and the execution and delivery of the mortgage of this property by the Pulp Company made that company liable as a wrong-doer, and also rendered liable, as joint wrong-doers, other parties taking part in such act of the Pulp Company with knowledge of the situation of that company with regard to the property.

That the giving of the mortgage constituted a conversion *per se,* and that no demand before suit was necessary.

APPEAL by the defendants from a judgment, entered in the office of the clerk of the county of Saratoga on the 17th day of January, 1890, on a decision rendered at Special Term in favor of the plaintiff, by which it was adjudged that the plaintiff recover of the defendants James M. Stewart and William R. Stewart the sum of $2,155.83, together with costs.

The action was brought to recover the damages resulting from an alleged conversion by the defendants of certain property consist-

ing of water-wheels which had belonged to the plaintiff, and had been delivered by it to the New York Pulp Company under a conditional contract of sale.

*E. T. Brackett*, for the appellants.

*Charles S. Lester*, for the respondent.

MAYHAM, J.:

This is an appeal from a judgment upon the decision of a judge, upon a trial before him at Special Term without a jury.

The action was for the alleged conversion by the appellants and the New York Pulp Company of four sets or pairs of water-wheels furnished by the plaintiff to the New York Pulp Company under the following agreement:

"HADLEY, N. Y., *April* 11, 1887.

"RODNEY HUNT MACHINE COMPANY:

"You will please manufacture and ship to the undersigned at Hadley, N. Y., four sets or pairs of twenty-four inch water-wheels per plan submitted and described in letters. In consideration of which the undersigned agree to pay with exchange, besides the freight from the manufactory, the sum of twenty-six hundred dollars. It is agreed that the above specified articles are to remain the property and subject to the order of the Rodney Hunt Machine Co. until paid for in full, and that if promissory notes are given for said sum no payment thereof or thereon shall divest the title of the said Rodney Hunt Machine Co. until all said promissory notes are paid in full.

"Nor shall any payment on account and receipt therefor divest said title until said sum is fully paid.

"And it is further agreed that this instrument evidences the whole contract under which said articles are received by the undersigned.

"HADLEY, SARATOGA Co., N. Y.

"NEW YORK PULP CO.,

"JAMES M. STEWART, *Manager.*"

The wheels referred to in the above memorandum were placed in the mills of the New York Pulp Company, for which two notes

of the company were given, on which there remained due and unpaid on the 1st of June, 1889, the time of the commencement of this action, the sum of $2,155.83. The memorandum or contract above set out was, on the 9th day of April, 1887, filed in the Hadley town clerk's office, but was never refiled.

On the 1st day of June, 1888, the New York Pulp Company borrowed of Mary Matilda Stewart, the mother of the defendants James M. and William R. Stewart, the sum of $3,500 in money, and, in consideration thereof and as security therefor, executed and delivered to her its real estate mortgage, covering the mills and real property of said company, and containing this clause: "Also all the machinery, water-wheels and fixtures now in, or which may hereafter be in or upon the mill, or on said premises." The mortgage also contained a clause that, if the interest (which was payable semi-annually) was not paid within thirty days from the time when due, the whole principal sum became due at the option of the mortgagee.

This mortgage was executed by and with the privity and procurement of the defendants who did not inform the mortgagee, who was their mother, of the existence of the plaintiff's claim under the contract for the wheels in question, and she took the mortgage without any knowledge of the existence of the same.

Default having been made in the payment of the installment of interest on said mortgage which fell due on the 1st day of December, 1888, an action was commenced for the foreclosure for the full amount of principal and accrued interest on the 15th day of February, 1889, and a sale of the premises, under judgment of foreclosure and sale, was effected on the 4th day of May, 1889, to James M. Stewart, one of these defendants.

On the 11th of March, 1889, by the procurement of the defendants, the New York Pulp Company executed and delivered to Mary Matilda Stewart a chattel mortgage upon the water-wheels in question, to secure a debt due from the New York Pulp Company to her for $15,000. This mortgage purports to be collateral to certain real estate mortgages held by her in her own right, and as executrix, against property of the New York Pulp Company.

The theory upon which the plaintiff prosecutes this action is that the New York Pulp Company was, under the contract, only plaintiff's bailee of the wheels in question, and that by the procuring and

giving of a mortgage on the property they (the company and these defendants) were guilty of a conversion of the same, and that these defendants are liable for participating in that conversion. Before the commencement of this action the plaintiff claims to have demanded the return of the wheels of the defendants, and that they failed or refused to return or surrender them on such demand. The chattel mortgage has never been foreclosed, and no possession of the wheels has ever been taken by the mortgagee thereunder.

The defendants insist that the contract between the plaintiff and the Pulp Company was a conditional sale, and not a bailment, and that the Pulp Company under the same got a mortgageable interest in the wheels, and that the mortgagee thereunder took the rights of the Pulp Company under the conditional sale; a right which the plaintiff could divest on the failure of the Pulp Company, or those succeeding to its interest, to pay the purchase-price, unless the plaintiff by failing to refile the conditional bill of sale within a year, under chapter 315 of the Laws of 1884, as amended by chapter 225 of the Laws of 1888, had lost its right as against a *bona fide* purchaser or mortgagee, and if it had, it was through its own neglect and created no right of action against the mortgagor or those defendants at whose instance the mortgage was made.

The question which seems first to be presented for consideration is, whether the New York Pulp Company could, as against this plaintiff, legally mortgage this property? And the answer to this question must depend upon the construction of the contract between the plaintiff and Pulp Company whether it was a conditional sale, the title to remain in the plaintiff until payment by the Pulp Company, which was a condition precedent to the vesting of the same with a qualified right of possession in the Pulp Company, dependent upon their performance of that condition. Or whether it was an absolute sale, under which the title passed at the time, and the conditions as to payment was a mere security for the price, as in *Wait* v. *Green* (36 N. Y., 556).

I am of the opinion that this was an executory contract for a sale, dependent entirely upon the payment, which was a condition precedent to the vesting of the title, and that the possession of the Pulp Company was also dependent upon the performance of that condition. That being so, whether the Pulp Company was a bailee in the strict

and technical meaning of that word, or was a conditional purchaser, it had no greater right to dispose of the property than a naked bailee.

In *Ballard* v. *Burgett* (40 N. Y. [1 Hand], 316), where the referee found that a yoke of oxen in controversy were, by the contract, to remain the property of the plaintiff until defendants' vendor paid for them, although defendant had no knowledge of such agreement, plaintiff was held entitled to recover the oxen. GROVER, J., says: "The possession of the contemplated purchaser gives him no better opportunity to impose upon purchasers than that of an ordinary bailee."

In *Herring* v. *Hoppock* (15 N. Y., 411), where, under a written bargain for the sale of a safe, the purchasers were to give a note for the price, and the writing contained a provision that the vendor neither parts with, nor does the vendee acquire any title until the note is fully paid. PAIGE, J., in delivering the opinion of the Court of Appeals, says: "Whenever there is a condition precedent attached to a contract of sale, and the condition is not waived by an absolute and unconditional delivery, no title passes to the vendee until he performs the condition, or the seller waives it." * * *

"No property could vest in them under the contract until the payment of the price of the safe. It remained in their possession as the property of the plaintiff. Their implied right to use it, until the maturity of the note, was not such an interest as could be levied upon; their possession until that time was as the mere bailee or servant of the plaintiff." (See, also, *Frank* v. *Batten*, 49 Hun, 95.)

In *Austin* v. *Dye* (46 N. Y., 502), the court says: "It is well established that neither an ordinary bailee of property, nor one having possession under an executory agreement to purchase, can give a title thereto to a purchaser, although the latter acts in good faith, and parts with value without knowledge or notice of the want of title of his vendor, or that third persons have claims upon the property," and the court, upon this proposition, cites, with approbation, the case of *Ballard* v. *Burgett* (*supra*), and add that the court held "that one who purchases personal property from an individual having possession under an executory agreement for purchase, the conditions of which have not been performed, acquires no title as against the original owner."

From these and many other cases which might be cited on this

point, it would seem well settled that a conditional purchaser under an executory contract to sell, not performed by him, takes no title which he can convey or transfer ; and it must follow that a transfer or sale by him would be a wrongful diversion of the property amounting to a conversion.

Was the mortgaging of the wheels such a transfer? The answer to this question must, to some extent, depend upon the effect which the mortgage may have upon the plaintiffs' right reserved under the contract with the Pulp Company. We have seen that under that contract the title remained in the vendor, subject to the power and right of the vendee to divest the same by the performance of the subsequent condition of payment provided in the agreement, which was a condition precedent to the vesting of the title in the vendee.

Is that rule changed as between the vendor and *bona fide* purchasers or mortgagees of the vendee by the provisions of chapter 315 of the Laws of 1884, as amended by chapter 225 of the Laws of 1888? Section 1 of chapter 315 of the Laws of 1884 is as follows :

" In every contract for conditional sale of goods and chattels hereafter made which shall be accompanied by an immediate delivery and followed by an actual and continued change of possession of the thing contracted to be sold, all conditions and reservations which provide that the ownership of such goods and chattels is to remain in the person so contracting to sell the same, or other person than the one so contracting to buy them, until said goods or chattels are paid for, or until the occurring of any future event or contingency, shall be absolutely void as against subsequent purchasers and mortgagees in good faith, and as to them the sale shall be deemed absolute, unless such contract for sale with said conditions and reservations therein, or a true copy thereof, shall be filed, as directed in the succeeding section of this act." Section 2 of this act provides that such filing shall be in the office of the town clerk; and section 3 provides that unless a copy thereof is refiled within thirty days next preceding the expiration of each year, together with a statement of the amount due or unpaid, the conditions and reservations specified in the first section of the act shall cease to be valid as against subsequent purchasers and mortgagees, in good faith, after the expiration of one year from the filing of such instrument.

As we have seen, the first contract was filed, but it was not

refiled, and the mortgages executed by the Pulp Company to Mrs. Stewart were both made more than one year after the filing of the original agreement in the town clerk's office.

It seems clear that the object of this statute was to change the rule between the vendor on a conditional sale and a subsequent purchaser or mortgagee of the vendee in good faith without knowledge of the condition, and that, unless the agreement evidencing the conditional sale is filed, and kept renewed from time to time as required by that act, the subsequent purchaser or mortgagee in good faith will hold the property as against the conditional vendor. If this be so, the unauthorized sale or mortgage by the conditional vendee may and would, as between the vendor and the vendee or mortgagee in good faith of the conditional vendee, completely divest the orginal vendor of title, and thus put it beyond his power to reclaim the property.

Under such circumstances, it would seem clear that the sale or mortgage by the conditional vendee, who, as we have seen, was before the performance of the condition under the conditional purchase, but a bailee of the vendor, is a conversion of the conditional vendor's chattel. While the conditional vendor would be precluded by the provisions of this act from pursuing his property, and recovering the same from a *bona fide* purchaser or mortgagee, the obligation of the conditional vendee to the vendor is not changed by this act. The conditional vendee is still, in effect, the vendor's bailee, and as such remains liable to the vendor for any conversion of the goods.

But it is urged that the plaintiff has been guilty of negligence in not refiling the contract of conditional sale, and by reason of that negligence, and not by the act of the Pulp Company, the plaintiff has lost its property in these wheels.

I do not think that the defendants are in a condition in this case to avail themselves of the plaintiff's alleged negligence as a defense to this action. The mortgages in each instance were absolute and do not purport to be subject to any other or superior outstanding title. It is clear that these defendants were both cognizant of the plaintiff's title in the property, and they were bound to know that a sale or mortgage by the Pulp Company was an unauthorized disposition of the plaintiff's property which the company held as agent or bailee of the plaintiff before the performance of the condition, which alone

would perfect the sale and vest the title in the Pulp Company. I think, under the circumstances of this case, the execution and delivery of the mortgages was a conversion of this property by the Pulp Company, and the part taken by the defendants made them liable as joint wrong-doers in that conversion.

The learned trial judge was right in holding that "the position of the Pulp Company in regard to these wheels is not unlike that of a mortgagor of personal chattels after default, when the title of the mortgagee is held to be absolute." In such a case, Thomas, in his treatise, on Mortgages says: " If the mortgagor or any person in his behalf, or under his title, does anything after breach of the condition which is inconsistent with the mortgagee's title, he will have an action against them for trespass or conversion." (Thomas on Mort., 446 ; *Dudley* v. *Hawley*, 40 Barb., 397.)

In the case last cited it was held that a sale of the mortgaged property after default by the mortgagors or their agent was a conversion of the goods, and that an agent of the mortgagors, who sold the goods and was ignorant of the existence of the mortgage, was liable as well as the mortgagors for the conversion ; and that the laches of the mortgagee in not reducing the goods to possession for more than a year after default was no defense in an action for conversion. The mortgaging of the wheels being a conversion *per se*, no demand was necessary, especially as we have seen that by that act the mortgagors put the property beyond their control, and, as between the plaintiff and a *bona fide* mortgagee, beyond the reach of the former by reason of the operation of chapter 315 of the Laws of 1884.

As it is admitted in the pleadings, and found as a fact, that this wrongful act of the Pulp Company was done "by and with the privity and procurement of the defendants," they, as well as the Pulp Company, are jointly and severally liable for the wrong. The rule is elementary that whoever aids or assists in the commission of a wrong is liable in an action for such wrong.

On the whole case, we think the decision of the learned trial judge was right, and that the judgment should be affirmed.

LEARNED, P. J., and LANDON, J., concurred.

Judgment affirmed, with costs.