DOMINICK RIVARA, Appellant and Respondent, *v.* JAMES STEWART & COMPANY, INC., Defendant, and JAMES STEWART & COMPANY,. Respondent and Appellant.

Ships and shipping — contract — conditional sales — vessel a chattel within meaning of provisions of Personal Property Law relating to conditional sales — no pre-emption by Congress, as to vessels, of field of regulation occupied by section 65 prescribing disposition of chattels retaken by seller under contract of conditional sale — buyer may recover installments paid upon failure of vendor to comply with statute after retaking — argument that sales at public auction are inadequate test of value one for Legislature not for courts — seller may recover on counterclaim for cost of insurance and repairs that should have been paid by buyer.

1. A vessel is a chattel within the purview of sections 60 and 65 of the Personal Property Law relating to conditional sales. (*Horton v. Davis*, 26 N. Y. 495, 497; *Best v. Staple*, 61 N. Y. 71, 76, followed; *White's Bank v. Smith,* 7 Wall. 646; *Aldrich v. Ætna Co.*, 8 Wall. 491, distinguished.)

2. In an action to recover installments paid upon the purchase price of a vessel, possession of which had been resumed by defendant for default in payment of later installments, without compliance with the provisions of section 65 of the Personal Property Law, an argument that the statute encroaches upon fields already occupied by Congress in the exercise of national powers, in that sections 62 and 63 prescribe other forms of record for contracts of conditional sale than provided by Congress, is not helpful to the defendant. The provisions of the Personal Property Law (§§ 62 and 63) are without importance except

where the rights of third persons, not parties to the contract, are involved. Between the parties themselves, the contract of conditional sale is valid though it is not filed anywhere, nor even put in writing. By section 65 a conditional vendor is required either to put up for sale the retaken chattels and give credit for the proceeds or restore the payments made to him, and there is nothing in any act of Congress that pre-empts this field of regulation or even touches it remotely.

3. A further argument that sales at public auction will be an inadequate test of value, for the buyer will take subject to maritime liens which may be secret and unknown, may supply a reason why the Legislature should have excepted vessels from the operation of the statute. It is not a reason why the exception should be established by the courts.

4. Upon defendant's counterclaim it properly recovered judgment for the cost of insurance premiums and repairs which should have been paid for by the buyer, and an argument that this is forbidden by section 65 is unsound. In providing for the recovery of payments on the subject of the sale, the statute has in view the payments made by the buyer as installments of the purchase price. It has no bearing on payments unrelated to the price, though the obligation to make them is expressed in the same contract.

*Rivara* v. *Stewart & Co.*, 214 App. Div. 737, affirmed.

(Argued October 27, 1925; decided November 24, 1925.)

CROSS-APPEALS, by permission, from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered July 15, 1925, affirming a judgment in favor of plaintiff entered upon a decision of the court at a Trial Term, a jury having been waived. (See 236 N. Y. 601.)

*James M. Gorman, Pierre M. Brown* and *Richard F. Lenahan* for plaintiff, appellant and respondent. As a matter of law the defendant had no right to recover items of insurance and repairs which it may have paid pursuant to the terms of the contract for the benefit of the tug. (*Warren* v. *Lair*, 190 App. Div. 139; 232 N. Y. 626; *Glisson* v. *Heggie*, 105 Ga. 34; *Ratchford* v. *Cayuga Co. Cold Storage & W. Co.*, 217 N. Y. 565; *Ohl* v. *Standard Steel Sections*, 179 App. Div. 637; *Stewart*

& *Holmes Drug Co.* v. *Ross,* 74 Wash. 401; *Edmeand* v. *Anderson,* 118 App. Div. 16.) The Conditional Sales Act of New York includes enrolled tugs within its purview. (*Crowe* v. *Liquid Carbonic Co.,* 208 N. Y. 396; *Adler* v. *Weis & Fisher Co.,* 218 N. Y. 295; *Warren* v. *Lair,* 190 App. Div. 139; 232 N. Y. 626; *Ratchford* v. *Cayuga Co. Cold Storage Co.,* 217 N. Y. 565; *Nordone* v. *Austin Drainage Excavation Co.,* 184 App. Div. 309; *Tompkins* v. *Fonda Glove Lining Co.,* 188 N. Y. 261; *Creamery Package Mfg. Co.* v. *Horton,* 178 App. Div. 467; *Alexander* v. *Kellner,* 131 App. Div. 809; *Bullock* v. *Dodds,* 2 B. & Ald. 276; *Chadbourne* v. *Duncan,* 36 Maine, 89; *Bixby* v. *Franklin Ins. Co.,* 25 Mass. 86; *Aguirre* v. *Maxwell,* 3 Blatchf. 140.)

*Harrington Putnam, John M. Woolsey, L. de Grove Potter* and *Alvah H. Combs* for defendant, respondent and appellant. The retaking of the tug and defendant's non-compliance with the Personal Property Law do not extinguish plaintiff's obligations to pay for insurance and repairs for the tug while in plaintiff's possession. (*Crowe* v. *Liquid Carbonic Co.,* 208 N. Y. 396; *Adler* v. *Weis & Fisher Co.,* 218 N. Y. 295; *Rindone* v. *Hamlin,* 161 N. Y. Supp. 858; *Siegel* v. *Riesen,* 97 Misc. Rep. 684; *Hoffman* v. *White Sewing Machine Co.,* 123 App. Div. 166; *Goldberg* v. *Wisner Manufacturing Co.,* 170 N. Y. Supp. 551; *Rivara* v. *Stewart & Co.,* 119 Misc. Rep. 73; *Warren* v. *Lair,* 190 App. Div. 139.) The question answered by this court on appeal from the order denying the cross-motions for judgment on the pleadings does not determine the present appeal. (*People* v. *Brooklyn, F. & C. I. R. Co.,* 89 N. Y. 75; *Demarest* v. *Mayor, etc.,* 147 N. Y. 203; *Dodge* v. *Cornelius,* 168 N. Y. 242; *Hanrahan* v. *Terminal Station Commission,* 206 N. Y. 494; *People ex rel. Carter* v. *Rice,* 135 N. Y. 473.) This Personal Property Law was not intended to affect vessels documented in a United States custom house. (*Towne* v. *Collins,* 14 Mass.

500; *Schmidt* v. *Simpson,* 204 N. Y. 434; *Bissell* v. *Hopkins,* 3 Cow. 166; *Coombs* v. *Beaumont,* 5 B. & Ald. 72; *Parish* v. *Wheeler,* 22 N. Y. 494; *Hooper* v. *Gumm,* L. R. [2 Ch.] 282; *Aguirre* v. *Maxwell,* 3 Blatchf. 140; *The Conqueror,* 166 U. S. 110; *Harrison Supply Co.* v. *United States,* 171 Fed. Rep. 406; *Tucker* v. *Alexanderoff,* 183 U. S. 424; *Palmer's Shipbuilding Co.* v. *Chaytor,* [1869] 4 L. R. C. B. 209; *Shannahan* v. *Empire Engineering Corp.,* 204 N. Y. 543.) The records of sales or conveyances of United States vessels are solely regulated by the laws of Congress. (*Prigg* v. *Pennsylvania,* 16 Pet. 539; *So. Railway* v. *Reid,* 222 U. S. 444; *People* v. *Erie R. R. Co.,* 233 U. S. 671; *Matter of Taylor,* 232 U. S. 363; *Union Fish Co.* v. *Erickson,* 248 U. S. 308; *Railroad Company* v. *Husen,* 95 U. S. 465; *Kansas City Railway Co.* v. *Kaw Valley Drainage Dist.,* 233 U. S. 75; *Missouri* v. *Kansas Gas Co.,* 265 U. S. 298; *Schuede* v. *Zenith S. S. Co.,* 216 Fed. Rep. 566; 244 U. S. 646; *Washington* v. *Dawson & Co.,* 264 U. S. 219; *Robins Dry Dock Co.* v. *Dahl,* 266 U. S. 449; *Chelentis* v. *Luckenbach S. S. Co., Inc.,* 247 U. S. 372; *Ex parte State of New York,* 256 U. S. 490; *State of Washington* v. *Dawson,* 264 U. S. 219; *Panama Railroad Co.* v. *Johnson,* 264 U. S. 375.)

CARDOZO, J. Plaintiff bought from defendant a tugboat, the *James B. Stewart,* under a contract of conditional sale. Payments aggregating $23,518.87 were made from time to time upon account of the price. As to later installments, the buyer made default. Following such default, the defendant resumed possession. It failed, however, to comply with section 65 of the Personal Property Law (L. 1909, ch. 45; now § 79, L. 1922, ch. 642 [Cons. Laws, ch. 4]). That section provides in substance that when goods and chattels are retaken by a conditional vendor, they shall be held for thirty days, during which time the vendee may redeem. If he does not redeem, the vendor may sell at public auction.

Unless he does this within the time prescribed, " the vendee  *  *  *  may recover of the vendor the amount paid on such articles by such vendee  *  *  *  under the contract for the conditional sale thereof."

Plaintiff, invoking the statute, brings this action to recover $23,518.87, with interest, the installments of the purchase price. Defendant counterclaims for moneys paid by it for insurance and repairs, which under the terms of the contract should have been paid by the buyer. Both parties appeal. The seller is dissatisfied because the buyer has been reimbursed for part payments of the price. The buyer is dissatisfied because the reimbursement has been reduced by the allowance of the counterclaim.

The seller argues that a conditional sale of vessels is not one of goods and chattels within the purview of the statute (Pers. Prop. Law, §§ 60, 65). Authoritative precedents commit us to a different ruling. We held in *Horton* v. *Davis* (26 N. Y. 495, 497, decided in 1863) that under the act of 1833 (L. 1833, ch. 279) a mortgage on a vessel is a mortgage on a chattel. We were advised by later judgments of the United States Supreme Court that the act in some of its requirements must yield to an act of Congress which covered the same field (*White's Bank* v. *Smith*, [1868] 7 Wall. 646; *Aldrich* v. *Ætna Co.*, [1869] 8 Wall. 491, reversing 26 N. Y. 92). Congress had said that " no bill of sale, mortgage, hypothecation or conveyance of any vessel or part of any vessel of the United States " should " be valid against any person other than the grantor or mortgagor, his heirs and devisees, and persons having actual notice thereof," unless the instrument was recorded in the office of the Collector of Customs where such vessel was registered and enrolled (Act of June 29, 1850; U. S. Rev. Stat. § 4192). The States could not add to these exactions in respect of enrolled vessels by a requirement that mortgages to be valid as to third parties must also be recorded elsewhere.

The Supreme Court did not deny that a mortgage on a vessel was within the terms of the State statute. Upon any question of construction, the judgment of the State court was to be accepted as conclusive. The reversal was based upon considerations of defect of power.

The question of construction came to us again in 1874, and we decided it as we had done before (*Best* v. *Staple,* 61 N. Y. 71, 76). We held that the ruling of the Supreme Court was confined to vessels enrolled and registered as vessels of the United States. If the vessel was not so enrolled and registered, the local act was to be followed. In so holding, we held again that a mortgage on a vessel was a mortgage on a chattel. The ruling then made has been unquestioned ever since (cf. *Witherbee* v. *Taft,* 51 App. Div. 87; *The Independence,* 9 Ben. 395).

The Chattel Mortgage Act is cognate to the act for the regulation of conditional sales. A vessel, if a chattel within the one, is plainly a chattel within the other. We can think of no distinction that would not condemn itself as arbitrary. Indeed, the definitions of the Sales Act instead of weakening the holding under the mortgage act, tend to reinforce it. " ' Goods,' " we are there told, " include all chattels personal other than things in action and money " (Pers. Prop. Law, § 156; cf. § 61, L. 1922, ch. 642). A vessel is not within the exception of " things in action and money." It is either a chattel personal, or else there must be a *tertium quid* which the statute does not classify. The description may seem inept in its application to an ocean liner. We are to remember that a vessel may be a motor boat or a skiff. Without more elaboration, we think the question is no longer open. The content of the statute may have been doubtful once. It is now settled by authority.

The seller argues that thus construed, the statute encroaches upon fields already occupied by Congress in the exercise of national power. The tugboat was enrolled and registered in the office of the Collector of Customs.

After the conditional sale, it was used in interstate commerce, though whether it had been so used before that time the record does not tell us. Congress has said that bills of sale, conveyances and mortgages shall be invalid against purchasers without notice unless recorded in a certain place. The provisions of Personal Property Law (§§ 62 and 63) are invalid, it is said, when they prescribe other forms of record for contracts of conditional sale. We pass over the question whether contracts of conditional sale are to be so identified with bills of sale as to lead to a holding that State regulation of the one subject is excluded by national regulation of the other (cf. *The Oceana,* 233 Fed. Rep. 139, 143; 244 id. 80, 83). Even if such identity be assumed, the defendant does not gain by the assumption. The provisions of Personal Property Law (§§ 62 and 63) are without importance except where the rights of third persons, not parties to the contract, are involved. Between the parties themselves, the contract of conditional sale is valid though it is not filed anywhere, nor even put in writing. If a controversy shall some day arise in which a mortgagee or buyer from a conditional vendee shall invoke sections 62 and 63 of the statute against a conditional vendor, the question will have to be determined whether those sections in their application to vessels of the United States are in conflict with the act of Congress. No question of the effect of a record or the lack of it in any public office, State or national, is before us at this time. What concerns us now is section 65, which fixes the implied terms of the contract between the parties to the sale. Its underlying thought is that a conditional vendor shall be made to do the fair thing by his conditional vendee. To avoid hardship and oppression, he must either put up for sale the retaken chattels, and give credit for the proceeds, or restore the payments made to him. He knows when he enters into the contract of conditional sale that this obligation is attached to it,

and he must be taken to have contemplated performance as much as if the obligation had been stated in the writing. In effect, a conditional sale is assimilated to a mortgage (2 Williston on Sales, § 579, at p. 1427). We find nothing in any act of Congress that pre-empts this field of regulation or even touches it remotely (*The J. E. Rumbell*, 148 U. S. 1, 16). The contract is not maritime (*Bogart* v. *S. S. John Jay*, 17 How. [U. S.] 399, 401, 402; *The Ada*, 250 Fed. Rep. 194, 198). The regulation of its incidents does not involve interference, unless indeed the most remote and indirect, with interstate commerce (*Heisler* v. *Thomas Colliery Co.*, 260 U. S. 245; *Lanston Monotype Machine Co.* v. *Curtis*, 224 Fed. Rep. 403). The standards of conscionable conduct are established by the State for those contracting within its borders. The defendant argues that sale at public auction will be an inadequate test of value, for the buyer will take subject to maritime liens which may be secret and unknown (*Piedmont & Georges Creek Coal Co.* v. *Seaboard Fisheries Co.*, 254 U. S. 1, 12; *Moran* v. *Sturges*, 154 U. S. 256). This may supply a reason why the Legislature should have excepted vessels from the operation of the statute. It is not a reason why the exception should be established by the courts. Statutes are not invalid for failure to cure completely the ills they aim to remedy.

This case was before us on an earlier appeal, and questions were then certified to bring up an intermediate order (236 N. Y. 601). The questions certified were these: " 1. Do the provisions of sections 63, 65 and 66 of the Personal Property Law of the State of New York (Consol. Laws, ch. 41) apply to ships and vessels enrolled in a United States Customs House? 2. Did the New York Legislature have power to require the filing with local officials, such as registers and county clerks, of contracts for conditional sale of vessels enrolled in a United States Customs House? 3. Does the complaint herein state facts sufficient to constitute a cause of action? " We answered

the third question " yes," though without opinion, and did not answer the others. We could not have upheld the complaint without construing section 65 of the statute and applying it to vessels. The decision then made became the law of the case. We have been moved by the earnest and able argument of defendant's counsel to state in an opinion the reasons that controlled our judgment when the case was here before.

The plaintiff's appeal brings up the allowance of the counterclaim. The seller has had judgment for the cost of insurance premiums and repairs which should have been paid for by the buyer. The plaintiff argues that this is forbidden by section 65 which gives the buyer restitution for " the amount paid on such articles * * * under the contract for the conditional sale thereof." We read the statute otherwise. In providing for the recovery of payments on the subject of the sale, the statute has in view the payments made by the buyer as installments of the purchase price. It has no bearing on payments unrelated to the price, though the obligation to make them is expressed in the same contract. If the plaintiff himself had caused the tug to be repaired or procured the policies of insurance, he would have no remedy against the defendant for expenses thus incurred. His position is no better when sued by the defendant for payments made in his behalf.

The judgment should be affirmed without costs to either party.

HISCOCK, Ch. J., POUND, McLAUGHLIN, CRANE, ANDREWS and LEHMAN, JJ., concur.

Judgment affirmed.