NEW DELLS LUMBER COMPANY, Respondent, vs. PFIFFNER, Appellant.

*December 3, 1934—January 8, 1935.*

For the appellant there was a brief by *Goggins, Brazeau & Graves* of Wisconsin Rapids, and oral argument by *Theodore W. Brazeau.*

For the respondent there was a brief by *Farr & MacLeod* of Eau Claire, and oral argument by *Arthur W. MacLeod.*

NELSON, J. It is alleged in the plaintiff's complaint that on or about March 17, 1930, plaintiff sold to the defendant

Schneider sixteen sets of logging sleighs upon condition that title would not pass to Schneider unless the purchase-price was fully paid within ninety days thereafter; that on or about September 4, 1931, defendant Schneider executed and delivered to defendant Pfiffner a chattel mortgage on fifteen sets of said sleighs as security for the payment of $298.72; that on February 8, 1932, defendant Schneider formally released to the plaintiff all of his interest in the sleighs; that in February, 1932, plaintiff attempted to take possession of the sleighs, but defendant Pfiffner refused to permit it so to do, and thereby converted them to his own use. The answer of defendant Schneider admitted the purchase of the sleighs from plaintiff upon the terms and conditions set forth in the complaint. The answer of defendant Pfiffner denied that the plaintiff sold the logging sleighs to Schneider upon condition that title would not pass until the purchase-price was paid. Trial was had to the court without a jury. The court found that the sleighs were sold by the plaintiff to defendant Schneider upon condition that the title and ownership thereof should remain in the plaintiff until the sleighs were fully paid for; that at the time of taking the chattel mortgage defendant Pfiffner had actual knowledge of such facts as would put a prudent man upon inquiry and which, if prosecuted with ordinary diligence, would have led to actual notice that the sleighs were sold by the plaintiff to defendant Schneider on a conditional sale contract; that the plaintiff, on May 27, 1932, demanded that the balance due it on the contract be paid or that the sleighs be delivered over to it, both of which demands were refused by defendant Pfiffner, and that the fair market value of the sleighs at that time was $300.

Defendant Pfiffner first contends that the evidence failed to establish that the sleighs were sold upon condition that the title and ownership thereof should remain in the plaintiff

until fully paid for; in other words, that they were sold under a conditional sale contract:

In order to disturb the finding of the court that the sleighs were sold on condition, we would have to be able to say that that finding is against the great weight and clear preponderance of the evidence. In our opinion, the pleadings and the evidence support the finding. In the plaintiff's complaint it was alleged that the plaintiff sold to the defendant Schneider logging sleighs upon condition that title would not pass to Schneider unless the purchase-price was fully paid within ninety days thereafter. The verified answer of Schneider admitted that he purchased the sleighs from the plaintiff upon the terms and conditions set forth in the complaint. A witness produced by the plaintiff testified that he was present when the deal for the sleighs was made; that a Mr. Hosford, who represented the plaintiff at that time, after having been told by Schneider that the latter had only $50 to pay down on the sleighs, said: "All right, we will ship you the sleighs, but you understand these sleighs still belong to the New Dells Lumber Company;" and that he himself told Schneider that the sleighs were the property of the New Dells Lumber Company until they were paid for. Mr. Hosford was not produced as a witness, probably for the reason that Schneider's answer admitted the allegations of the complaint as to the sale of the sleighs upon condition. Schneider paid $50 on the contract and gave his note for $578.15 to evidence the remainder of the unpaid purchase-price. The sleighs were thereafter shipped to Ashland county. In 1930, Schneider told the assessor of the township of Peeksville, in Ashland county, where the sleighs were located at that time, that the sleighs did not belong to him, because he had not paid for them. The sleighs were assessed to the plaintiff for that year, and the taxes were thereafter paid by it. With the exception of one answer made by Schneider, there seems to

be no testimony in the record that controverts the plaintiff's assertion that the sleighs were sold under conditional sale contract.

"*Q.* State whether or not you had any agreement at that time [date of purchase] that these sleighs would remain the property of the Lumber Company until they were paid for?

"By the Court: I think he has answered that, that he didn't. He can answer it again. You answer the same question the same way now?

"*A.* Yes, sir."

The record does not disclose that Schneider had theretofore denied, as assumed by the court, that the sleighs were to remain the property of the plaintiff until paid for. It cannot be said that that testimony was entitled to very much weight, in view of the admission contained in Schneider's answer.

A conditional sale contract is defined by our statute as follows:

"122.01 . . . (a) Any contract for the sale of goods under which possession is delivered to the buyer and the property in the goods is to vest in the buyer at a subsequent time upon the payment of part or all of the price, or upon the performance of any other condition or the happening of any contingency; or (b) any contract for the bailment or leasing of goods by which the bailee or lessee contracts to pay as compensation a sum substantially equivalent to the value of the goods, and by which it is agreed that the bailee or lessee is bound to become, or has the option of becoming the owner of such goods upon full compliance with the terms of the contract."

While the contract was not in writing, it was, notwithstanding that fact, a conditional sale contract, valid in all respects between the immediate parties to it. The contention of the defendant that, under our statute, ch. 122 (Uniform Conditional Sales Act), a conditional sale contract must be in writing, is without merit. In *Rivara v. Stewart*

*& Co.* 241 N. Y. 259, 149 N. E. 851, it was said by Judge CARDOZO, speaking for the court:

"The provisions of Personal Property Law, §§ 62 and 63, are without importance except where the rights of third persons, not parties to the contract, are involved. Between the parties themselves, the contract of conditional sale is valid though it is not filed anywhere, nor even put in writing."

The defendant next contends that, assuming that the sleighs were sold by the plaintiff to Schneider under a conditional sale contract, it was absolutely void as to Pfiffner because he took a chattel mortgage on the sleighs without notice of the oral agreement reserving property in the plaintiff.

Sec. 122.04 provides:

"Every provision in a conditional sale reserving property in the seller after possession of the goods is delivered to the buyer, shall be valid as to all persons, except as otherwise provided in this chapter."

Sec. 122.05 provides:

"Every provision in a conditional sale reserving property in the seller, shall be void as to any purchaser from or creditor of the buyer, who, without notice of such provision, purchases the goods or acquires by attachment or levy a lien upon them, before the contract or a copy thereof shall be filed as provided in this chapter, unless such contract or copy is so filed within ten days after the making of the conditional sale."

"Purchaser" includes mortgagee and pledgee. 122.01 (8). The controlling question therefore is whether Pfiffner took the mortgage on the sleighs "without notice" of the provision of the oral contract which reserved property to the sleighs in the plaintiff. It is undisputed that Pfiffner was never specifically told or informed, prior to the taking of the chattel mortgage, that the plaintiff reserved title to the sleighs until paid for. "Notice" is not defined by the act, so we

may properly assume that the legislature intended it to have no different meaning than it has in other statutes or other situations. The purpose of recording and filing acts is to furnish information as to title and to protect *bona fide* purchasers, *White's Bank v. Smith,* 7 Wall. 646, 655, 19 L. Ed. 211; or, in other words, to protect those dealing with the possessor of personal property against secret trusts or claims of those having no connection with the possession and no apparent connection with the title, *Kimball v. Post,* 44 Wis. 471, 476.

In *Brinkman v. Jones,* 44 Wis. 498, 519, in discussing the meaning of "actual notice," this court said:

"We think the true rule is, that notice must be held to be actual when the subsequent purchaser has actual knowledge of such facts as would 'put a prudent man upon inquiry, which, if prosecuted with ordinary diligence, would lead to actual notice of the right or title in conflict with that which he is about to purchase.' Where the subsequent purchaser has knowledge of such facts, it becomes his duty to make inquiry, and he is guilty of bad faith if he neglects to do so, and consequently he will be charged with the actual notice he would have received if he had made the inquiry."

We think it clear that, unless it be shown that a purchaser (mortgagee) had actual knowledge of such facts as would put a prudent man upon inquiry, which, if prosecuted with ordinary diligence, would lead to actual notice of the right or title in conflict with that which he is about to purchase, a conditional sale contract would be void as to him. The trial court followed that rule and found that Pfiffner had actual knowledge of such facts as would put a prudent man upon inquiry, and which, if prosecuted with ordinary diligence, would have led to actual notice that the sleighs were sold by the plaintiff to Schneider on a conditional sale contract, and that title was reserved by it. It is our opinion that that finding may not be disturbed. On June 15, 1931, nearly three

months prior to the giving of the chattel mortgage, the plaintiff wrote to Pfiffner, as follows:

"During December 1929 we sold 16 set of logging sleighs and 1063 ft. of chain to Chris. Schneider, Glidden, Wis., on which he still owes us $528.15, on which we hold his note to cover. We have been unable to make any collections from him and a couple of weeks ago we sent our Mr. S. C. Crowley to Glidden and Peeksville to check up on the equipment, and after a great deal of trouble he located the sleighs at your sawmill, a few miles north of Glidden. We understand that Mr. Schneider hauled the logs for you last winter with the sleighs, and we would thank you to advise us if he has any money coming from you. We have been very lenient and considerate with Mr. Schneider, but feel that this equipment should be paid for without further delay."

On June 17th, Pfiffner acknowledged receipt of the plaintiff's letter in which he discussed the unsatisfactory logging conditions of the prior winter and wrote:

"Our foreman, Mr. Carlon at Sells Spur, reports he has taken care of the sleighs as agreed with Mr. S. C. Crowley."

It appears without dispute that prior to that time Mr. Crowley, representing the plaintiff, had located most of the sleighs at Pfiffner's sawmill at Sells Spur, and had made arrangements with Mr. Carlon, Pfiffner's superintendent there, to gather up the sleighs which were apparently scattered about the mill-yard, and pile them up on boards, all at the expense of the plaintiff. On June 19th, the plaintiff wrote to Pfiffner, among other things, as follows:

"We wish to thank you for your prompt reply of June 17th, relative to logging sleighs which we sold to Chris. Schneider, and for which he has not paid. We feel that Mr. Schneider has used us in a very scurvy way inasmuch as we allowed him to retain these sleighs long after his note was due, and did not push him for payment. . . .

"We do not intend to allow Mr. Schneider to retain possession of those sleighs any longer. . . .

"Our Mr. Crowley found 15 set of sleighs in good condition at Sells Spur, and part of another set of sleighs which would indicate that one set was used to repair and replace the other 15 set. We would thank you to make us an offer on the 15 set now located at your mill."

On June 25th, Pfiffner acknowledged the receipt of plaintiff's letter of June 19th, and wrote:

"The writer expects to visit at Sells Spur this coming week and will talk with our foreman. In the meantime if you want to dispose of the sleighs that are there state price you expect. We would not care to make an offer. We are not in the market for any of the other items mentioned."

On August 18th, the plaintiff wrote to Pfiffner as follows:

"Since writing you last June we have had some correspondence with Chris. Schneider, and he has agreed to pay for the sleighs which are at Sell's Spur, before hauling time this coming winter.

"We have seventeen set of logging sleighs similar to those at Sell's Spur, on which we will quote you a price of $25 per set, F. O. B. cars Eau Claire. Please advise us if we should load out these sleighs for you, and if so give us shipping instructions."

On August 21st, apparently in answer to the second paragraph of plaintiff's August 18th letter, Pfiffner wrote the plaintiff as follows:

"Replying to your letter of the 18th for which we wish to thank you for writing, but at this time or we think at any time later on account of the situation in the lumber business and outlook for the immediate future we would not be in the market for any of the sleighs, or in fact logging equipment of any kind. We note your remark with reference to Christ. Schneider and understand he will be in a position to meet his obligations in your case as agreed. We are told he has been working steadily on a road job and to good advantage."

This correspondence was all had prior to the giving of the chattel mortgage to Pfiffner by Schneider. The testimony is undisputed that, at the time the chattel mortgage

was taken, Schneider told Pfiffner that he did not have the sleighs all paid for. In our opinion, the conclusion of the trial court that Pfiffner had actual knowledge of such facts as should have put him upon inquiry, and which would have led to actual notice of the fact that the sleighs were sold under conditional sale contract, and that title to them was reserved by the plaintiff until paid for, cannot, under the established law, be disturbed. We think the rule enunciated in *Commercial Credit Corp. v. Smith,* 106 N. J. Law, 94, 148 Atl. 756, 72 A. L. R. 161, is too exacting and not justified by the language found in 122.05. It was there said:

"It will thus be seen that in this state the rule is firmly established that, in the absence of compliance with the provisions of section 5 of the statute as to filing the contract, in order to defeat the rights of a judgment creditor of the buyer acquired by his levy, he must be shown to have had knowledge or notice, not only of the existence of the contract, but of the provision thereof reserving property in the seller and the right to elect that the whole purchase price shall be due on default in payment of any installment, at the time the writ was executed."

The court determined that the value of the sleighs as of the date of the alleged conversion was $300. The plaintiff has moved for a review of that finding. It asserts that the value of the sleighs, as shown by the testimony, was much more than $300 at that time. While there is evidence in the record which would no doubt have permitted the court to find that the fifteen sets of sleighs were worth $40 to $50 a set, there was, on the other hand, evidence tending to support the conclusion that the sleighs were worth less. Concededly, there was no market price. They were worth only what one who had use for them would give for them. Crowley, a witness for the plaintiff, testified in regard to the property:

"It was dead wood on our hands and we didn't want them."

Crowley further testified that he asked Pfiffner's foreman at Sells Spur to telephone down to Pfiffner at Stevens Point, and that at that time he probably made a price on the sleighs. The following questions and answers appear in the record:

"*Q*. Did you make a price on them? *A*. I don't just remember whether I did or not, possibly I did. I would not say I didn't.

"*Q*. Didn't you make a price of $300 at that time? *A*. All right. Let it go that way, at that time.

"By the Court: You mean you will not dispute but what you·did make that price? *A*. No, sir."

In addition to that testimony, it appears that on August 18, 1931, the plaintiff wrote Pfiffner as follows:

"We have seventeen set of logging sleighs similar to those at Sell's Spur, on which we will quote you a price of $25 per set, F. O. B. cars Eau Claire."

In view of this testimony, it is our opinion that the finding of the court as to the value of the fifteen sets of sleighs, which concededly had been used by Schneider in his logging operations during several winters, may not be disturbed.

*By the Court.*—Judgment affirmed.