FARMERS & MERCHANTS STATE BANK OF WISCONSIN DELLS, Appellant, vs. SCHULENBERG and others, Respondents.

*November 9—December 7, 1937.*

For the appellant there was a brief by *Dougherty & Dougherty* of Wisconsin Dells, and oral argument by *Robert Dougherty.*

For the respondents Jantz Brothers there was a brief by *Hill, Miller & Hill* of Baraboo, and oral argument by *James H. Hill, Jr.*

MARTIN, J. It appears that on March 17, 1936, the respondents, Ernest Jantz, Fred Jantz, and their respective wives, entered into a certain agreement in writing with the respondent, Herman Schulenberg, by the terms of which the Jantzes agreed to sell and Schulenberg agreed to buy a certain farm, comprising one hundred and seventy-two acres, located in the town of Delton, Sauk county, and certain personal property located thereon, for an agreed consideration of $15,000. A schedule of the personal property upon said farm was made and attached to the agreement, the estimated value of the personal property being $3,708. The agreement was in form a land contract. The consideration was evidenced by a certain promissory note of even date, executed by Schulenberg and made payable to the order of Ernest Jantz and Fred Jantz, on or before October 1, 1940, with interest at the rate of four per cent per annum. This note further provided for payments as follows:

"Fifty dollars ($50) is to be paid upon this note beginning on May 1, 1936, and on the first day of each and every succeeding month thereafter until the principal sum shall be fully paid. In addition to said payments of said fifty dollars ($50) per month, there shall be paid upon the principal amount of the indebtedness represented by this note the sum of five hundred dollars ($500) on the 1st day of October, 1936, and on the 1st day of February, 1937, and on the anniversary of said dates until the full amount shall be fully paid."

"It is further stipulated and agreed that if the amount in excess of the current interest for the month shall be less than

fifty dollars ($50), the difference between the current interest and the fifty dollars ($50) shall be applied upon the principal and that an adjustment shall be made between the parties as to principal and interest due on the first day of October and the first day of February of each succeeding year."

Schulenberg further agreed to make an assignment of a certain life insurance policy to the Jantzes, to the extent of a $5,000 interest therein, as collateral security to the agreement, and in that connection, the agreement provides:

". . . In which event when properly assigned and accepted by said company, the parties of the first part [Jantzes] will thereupon give to the party of the second part [Schulenberg] a bill of sale of all said personal property, free and clear of incumbrances and that clause of the contract retaining title in first parties shall from that time forward be revoked and of no effect."

The respondents, Ernest and Fred Jantz, contend that it was agreed between themselves and Schulenberg that this agreement of March 17, 1936, was to be left in escrow with the firm of Hill, Miller & Hill, to be delivered to Schulenberg upon his assigning to Jantz Brothers the insurance policy as collateral, to which reference has been made. It appears that the insurance policy was not assigned, and the evidence as to the escrow agreement fully sustains the fourth finding of fact, above quoted.

However, this does not dispose of the case. It appears without dispute that the respondent Schulenberg took possession of the farm and personal property, on or about April 1, 1936; that during the month of April, Jantz Brothers learned from their attorneys that the insurance policy had not been assigned, and at that time they knew that Schulenberg was in possession of the farm and all the personal property thereon. Thereafter and during the month of April, Jantz Brothers entered into an oral agreement with Schulen-

berg, whereby he was to continue in possession of the farm and personal property upon a rental basis of $50 per month, and the further payment of $500 on October 1, 1936. Concerning this oral agreement, Mr. Fred Jantz testified:

"*Q.* What was the conversation between you and Mr. Schulenberg? *A.* Well, I came out there and—I don't remember what day it was—the last of April or first of May— and those papers hadn't come, so I went out and talked to Schulenberg and I told him we would have to have some rent for the farm because we couldn't let it go like that and he said he would pay $50 a month and $500 the first of October and at the same time he said in June his cousin was coming and they would straighten that all up and he said he had sent these bonds or securities in for to be cashed and on the 27th day of October he would clean up all the personal property he said, *and we should give him credit for that rent and I agreed to that.*"

Schulenberg continued in possession of the farm and personal property, and on July 28, 1936, applied to the appellant bank for a loan in the sum of $658.95, representing that he had started a milk route, and that he had arranged to purchase a truck for use in connection with his milk-route business. He claimed that he was not in a position to make a down payment on the truck and would furnish security for the loan. He gave the bank a statement of what he owned. A representative of the bank went to what they supposed to be his farm to see the horses and other personal property on which he had offered to give the chattel mortgage. After examining the personal property, the bank called the office of the register of deeds to ascertain if there were any incumbrances on the personal property. Being advised there were none, the bank made the loan in the sum stated, taking Mr. Schulenberg's note, secured by a chattel mortgage on the four horses involved in this replevin action; also including other personal property.

Although the written agreement of March 17th remained in escrow and was never delivered to Schulenberg, the fact

appears without dispute that, on or about May 1, 1936, Jantz Brothers made a new oral agreement with Schulenberg, permitting him to continue in possession of the farm and personal property, upon condition that Schulenberg pay to Jantz Brothers, as rent, the sum of $50 per month, commencing May 1, 1936, and the further sum of $500 on October 1, 1936, upon the understanding that if Schulenberg, in the meantime, complied with the terms and conditions of the written agreement of March 17, 1936, or if he complied with that part of said agreement by paying the agreed purchase price for the personal property located upon the farm, the sums paid as rental would be applied on the purchase price of the personal property. In other words, the new oral agreement gave Schulenberg the option to purchase the personal property at the price agreed upon, at any time up to and including October 1, 1936.

The appellant contends that the new oral agreement constituted a conditional sale under the Uniform Conditional Sales Act, ch. 122, Stats. On the other hand, the respondent, Jantz Brothers, contend that the Uniform Conditional Sales Act has no application. This is the legal issue for our decision. No contention is made here that the bank, as mortgagee, had actual knowledge at the time it took the chattel mortgage from Schulenberg, that Jantz Brothers were the owners of the personal property then in the possession of Schulenberg, or that they had any interest therein. Nor is any contention made that the bank had actual knowledge of such facts as would put a prudent man upon inquiry, which, if prosecuted with ordinary diligence, would lead to actual notice of the right or title in conflict with that which the bank was about to acquire under its chattel mortgage.

A "conditional sales contract" is defined by our statutes as follows:

"122.01 (1) . . . (a) Any contract for the sale of goods under which possession is delivered to the buyer and the property in the goods is to vest in the buyer at a subsequent

time upon the payment of part or all of the price, or upon the performance of any other condition or the happening of any contingency; or (b) Any contract for the bailment or leasing of goods by which the bailee or lessee contracts to pay as compensation a sum substantially equivalent to the value of the goods, and by which it is agreed that the bailee or lessee is bound to become, *or has the option of becoming the owner of such goods upon full compliance with the terms of the contract."*

Whether we consider Schulenberg as a bailee or lessee, it is admitted by Mr. Fred Jantz, in his testimony, that Schulenberg had the option of becoming the owner of such personal property by paying the agreed purchase price at any time between May 1 and October 1, 1936. Schulenberg represented himself to the bank as a farmer who had established a milk route. He applied to the bank for a loan to buy a truck for use in connection with his milk route. He offered to furnish security in the form of a chattel mortgage on what he claimed to be his personal property. A representative of the bank went to the farm, looked at the personal property, made inquiry at the office of the register of deeds as to whether there were any incumbrances against the personal property. Being informed there were none, the loan was made and the chattel mortgage in question was given by Mr. Schulenberg. The law of the case is ruled by *New Dells Lumber Co. v. Pfiffner,* 216 Wis. 638, 258 N. W. 375, and the cases there cited. In that case, there was an additional issue, not involved in the present action, namely, the knowledge which Pfiffner had of the rights reserved under the conditional sale contract between the Lumber Company and Schneider, from whom Pfiffner secured his chattel mortgage. The contract between the Lumber Company and Schneider was an oral contract. The court held it was a conditional sale contract and came within the provisions of the Uniform Conditional Sales Act.

Sec. 122.05 (1), Stats., provides:

"Every provision in a conditional sale reserving property in the seller, shall be void as to any purchaser from or credi-

tor of the buyer, who, without notice of such provision, purchases the goods or acquires by attachment or levy a lien upon them, before the contract or a copy thereof shall be filed as provided in this chapter, unless such contract or copy is so filed within ten days after the making of the conditional sale."

"Purchaser" includes mortgagee and pledgee. 122.01 (8), Stats.

No claim is made that the bank did not act in good faith in making the loan to and taking the chattel mortgage from Schulenberg. Notwithstanding the findings and conclusions of the trial court, under the Uniform Conditional Sales Act and the decision in *New Dells Lumber Co. v. Pfiffner, supra,* the judgment must be reversed, with directions to enter judgment in favor of the plaintiff and against the defendants for the stipulated value of the four horses involved in the replevin action, to wit, in the sum of $312 and costs.

*By the Court.*—Judgment reversed, and cause remanded with directions to enter judgment in favor of the plaintiff, against the defendants, for the sum of $312 and for the taxable costs and disbursements.