LIPPMAN PACKING CORPORATION, Plaintiff, *v.* MORRIS ROSE, Defendant.

Municipal Court of the City of New York, Borough of Manhattan, March 27, 1953.

*Rubin Cohen* and *Joseph Lewis Simon* for plaintiff.

*Sidney Peilte* for defendant.

WAHL, J. This is an action for fraud and deceit alleged to have been practiced by the defendant upon the plaintiff.

Prior to July 14, 1950, the Midway Meat Distributors, Inc., a domestic corporation, purchased on credit certain meat products from the plaintiff in the sum of $243.50. The defendant Rose

was the president of the corporation and actively engaged in the management thereof. The defendant, in order to induce the plaintiff to deliver more meat products to the corporation, about July 14, 1950, drew and delivered a check in the sum of $243.50 to the plaintiff and, thereupon the plaintiff delivered to the corporation merchandise consisting of more meat products of the value of $144.94 on the faith of the check. Payment of the check was refused by the drawee because of the insufficiency of funds.

All of the elements of actionable fraud are pleaded in the complaint.

Plaintiff's exhibits " 2 " and " 3 " in evidence were, respectively, a transcript of the Midway bank account during the period in question, and an affidavit of an official of the bank setting forth each check drawn on said account during said period on which payment had been refused for insufficient funds. These exhibits established beyond dispute that at no time between July 14, 1950, when the check was delivered to plaintiff, and July 31, 1950, when the account ceased to be active, was there ever sufficient funds in Midway's account to meet the said check.

There are various definitions of fraud, but, essentially, it entails the false representation of a material fact, made with the knowledge of its falsity, a reliance thereon by the plaintiff and damage as a consequence thereof. If any of the elements is lacking, there is no fraud. One who, with knowledge that there are insufficient funds in the account upon which it is drawn, draws and delivers a check, as in the instant case, commits actionable fraud when the check is given for the purpose of inducing the sale of further merchandise on credit and it is unnecessary that the defendant benefit from the fraud, or that the account on which the check is drawn be in the name of the defendant. In short, it is sufficient if the defendant, as an officer of the drawer corporation, draws a check, makes delivery, knowing the check is " bad " or will be dishonored on presentation, delivers it for the purpose of inducing plaintiff to rely on the inherent representations. The fraud becomes actionable when the plaintiff, relying upon the representations, suffers damage.

The wrongful act was committed by Rose, and the fact that he was acting on behalf of Midway Meat Distributors, Inc., does not relieve him from culpability.

The drawing and delivery of a check is, in effect, a representation that there are funds in the bank sufficient to meet the check

on presentation and that it will be honored on presentation. (*Heuertematte* v. *Morris,* 101 N. Y. 63, 70; *King* v. *Murphy,* 151 N. Y. S. 476.)

The defendant's knowledge that the representations were false is inferrible from the facts that he was the president of the Midway Meat Distributors, Inc., was active in its management and is chargeable with knowledge of the state of its bank account.

That the drawing and delivery of a check is equivalent to a representation that the check is good and will be honored and paid when presented for payment is clear from the decision of the court in *King* v. *Murphy* (*supra*). There, a check was given in payment for cattle. The check was dishonored on presentation and the plaintiff sued the defendant for damages for fraud and deceit. For reasons of improper pleading the complaint was dismissed, with leave to plead over, but in the course of the opinion, the court had this to say concerning the importance of a check in such circumstances (p. 480) : '' A check is intended to be the representative of cash. It is the business of the drawer to know the state of his account with his bank and as to whether through fraud or carelessness he makes the representation that he has cash to meet it, *as he does by the act of drawing it,* it would only be a premium upon looseness in commercial transactions to permit him to shield himself behind the plea of want of presentment or notice. It is he who is chargeable with the duty of notice as to his own funds, and he perpetrates a willful fraud when he undertakes to transfer or assign to another that which he does not possess, and especially so if in a present transaction he thereby induces another to part with the title to valuable property in relying thereupon.'' (Italics supplied.)

*King* v. *Murphy* (*supra*) has been frequently cited with approval and is declarative of the law of this State.

The Court of Appeals in *Heuertematte* v. *Morris* (*supra*) was explicit on this very point, Chief Justice RUGER saying at page 70: '' The delivery of a bill or check by one person to another for value implies a representation on the part of the drawer that the drawee is in funds for its payment ''.

In *Cudahy Packing Co.* v. *Dorfman* (N. Y. L. J., Nov. 7, 1952, p. 1089, col. 6) the court in a case similar to the one at bar reversed a contrary ruling and cited as controlling authority *Heuertematte* v. *Morris* (*supra*).

The defendant contends that the act of the defendant was in reality the act of the corporation and that Rose, though president of the corporate entity, is not chargeable with knowledge

of the corporate finances. It is true that what is often spoken of as a corporate act is in reality the act of an individual which, being within the scope of a corporation's purposes and business and performed by an authorized individual, is ascribable to the corporation. This is so in the ordinary commercial transaction, but in the field of torts, especially intentional torts or those requiring some personal guilty knowledge, the individual, and not the corporate entity, may be held responsible.

In a long list of cases it has definitely been held that the officers, directors and agents of a corporation are jointly and severally liable for torts committed on behalf of a corporation and the fact that they also acted on behalf of the corporation does not relieve them from personal liability.

The first case in which this rule was pronounced was *Rodney Hunt Mach. Co.* v. *Stewart* (57 Hun 545), in which the court held the manager of the corporation liable for conversion. The court held (p. 553): " As * * * it is found as a fact, that this wrongful act of the pulp company was done ' by and with the privity and procurement of the defendants,' they, as well as the pulp company, are jointly and severally liable for the wrong. The rule is elementary that whoever aids or assists in the commission of a wrong is liable in an action for such wrong. On the whole case, we think the decision of the learned trial judge was right, and that the judgment should be affirmed."

In *McCrea* v. *McClenahan* (131 App. Div. 247, 248) the Appellate Division, Second Department, held: " We are unable to discover any good reason for dismissing the complaint as against McClenahan. He was the president, and apparently in charge of the brewing company's business. It was he who refused to give up possession of the chattels concededly belonging to the plaintiff, his refusal being based upon an assumed right to a lien upon the same for storage. *The tortious act was his own act, and the fact that he was also acting in behalf of the brewing company does not serve to relieve him from personal responsibility.* (*Rodney Hunt Machine Co.* v. *Stewart,* 57 Hun, 545, 553.) The judgment appealed from should be reversed." (Italics supplied.)

The *McCrea* case has been uniformly followed in all succeeding cases.

An officer of a corporation is personally liable for his own fraud and deceit irrespective of whether he committed such for his own personal benefit or for the benefit of a corporation of which he is an officer and/or director. (*First Nat. Bank of Hempstead* v. *Level Club,* 241 App. Div. 433.)

In that case, Justice MARTIN, later Presiding Justice, speaking for a unanimous court, had the following to say concerning the liability of officers and directors actively participating in the fraud there involved: " On this appeal we are not concerned with the liability of the directors who took no part in the transaction. They obtained a dismissal of the complaint by consent of all of the parties. However, several of the other defendants were shown to be in charge of and familiar with the books which contained full information on the subject of the subscriptions, the failure to pay same, and the numerous defaults in said payments. Other defendants attended and took part in the meeting of the board of directors which approved the transaction by resolution setting forth facts which, if true, made the purchase of the notes a very desirable investment. They not only approved the letter but authorized its issuance. Under well-known principles of law they are liable." (See, also, *Hotaling* v. *Leach & Co.,* 126 Misc. 845; *Matis* v. *Griscom,* 64 N. Y. S. 2d 534; *Morehouse* v. *Yeager,* 71 N. Y. 594, and *Lobby Display Corp.* v. *Steinberg,* 281 App. Div. 678.)

It is of course not necessary that the defendant in an action for fraud or deceit should have any interest in the result of the fraud or should derive any benefit therefrom. (*White* v. *Merritt,* 7 N. Y. 352 [1852].)

In the present case it may be presumed that the defendant directly benefited from the fraud inasmuch as he was an officer of a corporation which was a close corporation, operating a small retail business where the ownership of the corporation was directly in defendant's or in related hands. The defendant in this case is, in essence, what has come to be known among commentators on the law as a corporation sole, and its rights, duties and obligations must be looked at from that viewpoint. (Fuller, The Incorporated Individual: A Study of the One-man Company, 51 Harv. L. Rev. 1373.)

The defendant Rose did more than use the corporate entity as a legitimate means of protection and is therefore responsible for his fraud and deceit in the same manner as though the check had been drawn on his own account.

Judgment for the plaintiff in the sum of $144.94. Body execution may issue in due course.