ARMOUR AND COMPANY, Plaintiff,

v.

Joseph P. CELIC, J. Dwright Reeve, Thomas White, Alfred W. Topping, William A. Zeh, Robert W. Gillispie, Harold E. Goodale and Isidore P. Krupski, Defendants.

Civ. A. No. 18151.

United States District Court
E. D. New York.

Nov. 2, 1960.

Weissman & Levenbron, Huntington, N. Y., for plaintiffs; Otho S. Bowling, New York City, of counsel.

Griffing, Smith, Tasker & Lundberg, Riverhead, N. Y., for defendants, Celic, Reeve, Zeh, Gillispie, White and Krupski.

Sol Gordon, Huntington, N. Y., for defendants, Goodale and Topping; Reginald C. Smith, William W. Esseks and Pierre G. Lundberg, Riverhead, N. Y., of counsel.

ABRUZZO, District Judge.

The plaintiff, Armour and Company, instituted this action against eight individuals who were officers and directors of the Suffolk Farmers Cooperative Association, Inc., hereinafter referred to as the Co-op, to recover the sum of $59,264.-81. The Co-op is not a defendant.

The plaintiff's cause of action against these eight individuals is laid on the basis of trover or conversion. The complaint alleges that on or about February 1, 1956, the plaintiff entered into an agreement, Exhibit 1, with the Co-op under the terms of which plaintiff agreed to deliver and the Co-op agreed to accept fertilizer on consignment and for plaintiff's account, and all sums resulting from the sale to become and remain the property of the plaintiff; that the sums realized from the sale of the fertilizer were not remitted to plaintiff but were converted by the Co-op and the defendants.

The plaintiff in its brief contends that only three issues have to be determined, (1) to whom did the fertilizer belong, (2) was it converted, and (3) if it was converted, who was responsible.

The answer admits that all of the defendants except White and Topping were directors at all of the times mentioned in the complaint, and that White and Topping became directors in May, 1956, and November, 1956, respectively. It is not denied by the defendants that on or about February 1, 1956, the Co-op signed a paper writing for the sale of fertilizer and that thereafter Armour did deliver fertilizer which fertilizer was sold by the Co-op to others. The defendants admit that at the time of the commencement of this suit the Co-op owed Armour a substantial amount.

The separate defenses set forth by the defendants may be summarized as follows:

1. At the time of the signing of the paper writing, and at all times during the existence of the Co-op, there existed, to the knowledge of Armour, in Suffolk County, a method of doing business, a general custom and practice, whereby wholesalers sold farm supplies to the growers in exchange for produce delivered to those wholesalers, and that pursuant to that custom, Armour fertilizer was delivered to the growers with the full knowledge, approval and consent of the plaintiff.

2. That at no time were the defendants advised of the true nature of the contract, and that by reason thereof, plaintiff is estopped in an action in trover against the defendants.

3. That all the actions of the plaintiff were inconsistent with a consignment contract, were consistent with the relationship of debtor and creditor, and that the plaintiff waived the observance of the written terms of the agreement, Exhibit 1, as against the Co-op, and that it is estopped from claiming tort.

4. That by reason of the acts (set forth in paragraphs 7 to 37 of the answer), plaintiff has agreed to treat the transaction as an ordinary sale to the Co-op, and has waived its right to assert

trover against these defendants. (Deft. Br. 3.)

5. That the plaintiff has failed and refused to pursue its remedy against the Co-op and others.

6. That in fact the agreement alleged in the complaint was not in effect because it did not conform with the provisions of paragraph 14 of the agreement which provides as follows:

"14. This contract shall not be binding upon us until confirmed in writing by one of our duly authorized division managers."

The facts can be stated briefly as follows:

At a meeting of the Co-op on January 21, 1956, the following directors (defendants) were present: Zeh, Krupski, Gillispie, Goodale and Reeve; the attorney for the Co-op, one Hubbard; five representatives of the plaintiff including its district manager, Post, and its regional sales manager for Eastern Long Island, Walter. At this meeting the contract and the benefits to be derived from the contract were discussed. A form copy of a contract was passed among the directors present and Hubbard. It provided, "We hereby agree to consign to you for sale, on commission and for our account * * *" quantities and brands of plaintiff's fertilizer products as agreed upon from time to time between the plaintiff and the Co-op. It also provided that all products delivered to the Co-op until sold and all cash, notes and accounts resulting from sales shall remain plaintiff's property. It provided further that the contract was not to be binding on plaintiff until confirmed by one of plaintiff's authorized division managers (Par. 14, Ex. 1).

A contract (Ex. 1) was not signed at this meeting but on January 27, 1956, defendant Zeh, president, signed it on behalf of the Co-op. Post signed it (Ex. 1) on February 1, 1956, but no proof has been offered by plaintiff that it was actually mailed or delivered to the Co-op although Post testified that he gave instructions to his secretary to mail it.

The defendants claim that the agreement was not received by the Co-op signed by any division manager of plaintiff and until such time as it was delivered by hand or mail the agreement was not in effect. (The record will indicate that the Court had its own misgivings on this point and pressed counsel for the plaintiff for proof of mailing or delivery of the agreement to the Co-op.) Testimony of defendant Goodale, secretary of the Co-op, reveals that at a meeting of the Co-op held on February 1, 1956, he noted in the minutes of the meeting that Zeh stated that he received a letter from Armour and Company welcoming them into the family. Armour raises the contention that this in effect is proof that the Co-op did receive notification that the agreement had been accepted by plaintiff. This letter from Armour was not offered in evidence by the defendants, nor was a copy offered by the plaintiff, so that this Court must believe that there was nothing in that letter which referred to confirmation of the agreement, Exhibit 1.

The defendants who were present at the meeting of January 21, 1956, testified that the word "consignment" was never mentioned at the meeting although Post and Walter testified to the contrary. They also testified that they were not informed that they had to keep a trust or special agency account, never were advised about "consignment" until June 12, 1957, and that they never saw a copy of the confirmed contract until after the commencement of this action.

A fertilizer account was opened in March, 1957, and money received for fertilizer was deposited in this account, however, two other companies furnished fertilizer to the Co-op and the funds received from the sale of all three accounts were commingled in this fertilizer account. Money for the Co-op's payroll was drawn from this account.

Hubbard testified that he was present at the meeting of January 21, 1956, as counsel for the Co-op, but at the trial he could not recall whether the word "consignment" was used by anyone. Al-

though he recognized that Exhibit 1 was a consignment contract he had no recollection of telling the directors so but told them that it was a contract designed for the benefit and protection of Armour and Company.

Armour commenced delivering large quantities of fertilizer to the Co-op on April 10, 1956. All charges for fertilizer shipped up to March 27, 1957, had been paid but charges for a large quantity of fertilizer shipped subsequent thereto remained unpaid, and on July 3, 1957, the Co-op made an assignment for the benefit of its creditors to Hubbard, its counsel. The plaintiff filed a proof of claim as a preferred creditor (Ex. R) but has not commenced any legal action to establish its preference. In an interim report dated May 29, 1958, filed with the Supreme Court of the State of New York, County of Suffolk, Hubbard stated that he held a balance of $42,546.80 (Ex. S). At the trial he testified that he had on hand approximately $42,000.

On March 1, 1957, a letter (Ex. O) was forwarded on the letterhead of the Co-op to all of the Co-op's creditors, signed by Albrecht, its comptroller, stating that the books of the Co-op were undergoing an annual audit and requesting the creditors to confirm the balance due them as of February 28, 1957. In reply, they received a bill from plaintiff listing five invoices showing a total balance due of $3,669.19 (Ex. J). Nothing was mentioned in the bill concerning a consignment or any other special arrangement.

The credit extended to the Co-op by plaintiff was not in conformity with the provisions of the contract (Par. 2, Ex. 1). In some instances the plaintiff sent invoices to the Co-op for unpaid fertilizer containing terms of payment as 2% 30 Days Net 60; 2% 10 Days Net 30; and also 2% 60. The first and only time plaintiff reviewed the Co-op's account was in June, 1957, and only after it learned that the Co-op was in financial straits.

In one instance, a farmer went directly to Carteret, New Jersey, and hauled fertilizer in his own truck. This farmer's bill came directly from the office in Carteret although Walter, plaintiff's sales representative, normally did the billing for deliveries to the Co-op.

Post testified that pursuant to Exhibit 1 the Co-op had until August 1 for a final settlement of moneys due the plaintiff (Tr. 66–67). While on the stand he looked at the agreement and testified that that was his interpretation of the so-called agreement. There is nothing in Exhibit 1 which mentions any final settlement date. In Clause 8 this provision is made: "All cash received shall be remitted to us promptly upon demand."

Defense numbered 2 is not relevant to the issues, for if Exhibit 1 was a valid agreement the directors would be bound by the written terms of that contract because they would be charged with knowledge of its existence. Hubbard testified that he knew the form contract shown to the directors at the January 21, 1956, meeting was a consignment contract. Notice to Hubbard, the Co-op's attorney, was notice to his client, the Co-op. See In re Locust Bldg. Co., 2 Cir., 299 F. 756, 769.

The relevancy of defense numbered 5 will be dealt with below. Defenses numbered 1, 3, 4 and 6 in reality are two defenses, first, that Exhibit 1 was not delivered after being approved by one of Armour's managing directors and, second, assuming that even if the agreement had been delivered to the Co-op by Armour, there existed, to the knowledge of plaintiff, a general custom and practice in the community whereby wholesalers sold farm supplies to farmers in exchange for potatoes and produce, and that such method of doing business was done by the Co-op with full knowledge, approval and consent of the plaintiff; and that the plaintiff, if it had a valid agreement (Ex. 1) through its course of conduct did nothing indicative that deliveries of fertilizer to the Co-op were pursuant to a consignment agreement (Ex. 1) but were consistent with a relationship of debtor and creditor.

The plaintiff's approval of this method of doing business through its course of conduct in dealing with the Co-op is borne out by the following testimony of Walter (Tr. 433–435):

"Q. Isn't it true that some of them even went from Carteret directly to the rail head or the bus load went to the farmer in the spring of 1957? A. It could have been.

"Q. Well, isn't it true? A. I would have to see it. Yes, I see one here—one number apparently had gone to Carteret with his truck and hauled it out.

"Q. Yes, and that was an approved process in your dealings with the cooperative. Isn't that true? A. He apparently got an order from the cooperative to go in and get this fertilizer.

"Q. Well, you approved of that, didn't you? A. I didn't approve of it, no.

"Q. Well, you passed on it as it was billed. Isn't that right? A. No. This is a direct shipment from the office. They make the billing on that, sir.

"Q. All right. Well, you knew what was going on, didn't you?

"Mr. Bowling: Well, now, that covers too much ground.

"The Court: Yes, sustained.

"Q. You knew the various processes by which these farmers were getting this fertilizer all during this year, didn't you?

"The Court: In 1957. A. Yes.

"Q. In 1957? A. Yes.

"Q. You were there, weren't you? A. Yes.

"Q. And you were the local representative of Armour in that community? A. Yes, sir.

"Q. And you knew the manner and the steps in each instance to get the fertilizer in into the farmer's house, or into the farmer's ground, didn't you? A. Yes, sir.

Invoices received by the Co-op from the plaintiff are not indicative that the transactions between plaintiff and the Co-op involved a consignment contract. They seem to indicate a contrary intent. Exhibit E, Invoice No. 6024, dated March 25, 1957, is for 20,000 tons of one brand of fertilizer and 20,000 tons of another, for a gross amount of ·$1,129 and net amount .of $1,031.26 after deductions of various items. It reads, "Agent's contract 2% 30 Days Net 60," and a notation placed thereon by a rubber stamp reads, "Deduct 2% Discount From Gross Amount If Paid Within 30 Days $22.58." The amount $22.58 is typed in what appears to be the same type as the typewritten part of the invoice.

Exhibit F is a photostatic copy of a statement consisting of 13 sheets of the account between plaintiff and the Co-op from April 10, 1956, to January 22, 1957. It lists 522 separate transactions. Post described this exhibit as a photostat of ledger cards. Each transaction has a symbol and a reference number. There are 342 transactions bearing the symbol NC; 158 bear the symbol AC; 13 bear the symbol JE; and 9 bear the symbol CS. These symbols are defined at the bottom of each sheet as follows:

NC stands for net cash
AC Agents contract
JE Journal entry
CS Cash

There are other symbols defined at the bottom of the statement, one is OC, another OD, a third PA, one RG, and another SD. These symbols are defined as open credit, open debit, price adjustment, returned goods and sales discount. On some of the sheets one or more of these symbols are marked with a check. The amount of each invoice is listed under a heading of "debit" and various payments are listed under the heading "credit."

Exhibit H is a photostat of a statement dated July 18, 1957, consisting of five sheets. It is a statement of account between plaintiff and the Co-op for the year, 1957, and lists approximately 140

invoices. The amount of each invoice is listed under a heading "debit" and various payments are listed under the heading "credit."

Exhibit J is also a statement of account between plaintiff and the Co-op. It is dated March 10, 1957, and lists five invoices, one dated January 28, 1957, two dated February 7th, and one February 14th. Nothing in Exhibits E, F, H or J, and these exhibits cover a large percentage of the transactions between Armour and the Co-op, remotely suggests that a consignment agreement was in effect. The transactions covered by these four exhibits are wholly inconsistent with a consignment agreement—they are indicative of a debtor and creditor relationship.

Defendants also contend that the plaintiff, although it had many rights under the agreement, did not exercise any of them. That they did not is borne out by many factors. The agreement provided for a special account to be opened by the Co-op for the proceeds received from the sale of the fertilizer. The agreement provided that the plaintiff could at all times examine the books of the Co-op. Plaintiff made no attempt to examine the books until the Co-op was in financial straits (Par. 7, 8, 12, Ex. 1). The plaintiff did not insist that the moneys received from the sale of plaintiff's fertilizer be segregated until the Co-op was in financial straits. Armour never made an inspection of the inventory on hand. They could have pursuant to Exhibit 1. The bills rendered to the Co-op by plaintiff were strongly suggestive of a sale of this fertilizer rather than a consignment. In none of the bills or invoices rendered is there any suggestion that the plaintiff and defendant were conducting business transactions pursuant to a consignment agreement, nor did they make any mention of consignment in Exhibit J, the reply to Exhibit O which requested confirmation of the balance due from the Co-op to plaintiff as of February 28, 1957. The plaintiff had knowledge of the general custom and practice in that vicinity with respect to the sale of fertilizer. It conducted the business relationship in accordance with that custom and practice, to wit, outright sales.

Plaintiff in its brief contends that the question of execution of Exhibit 1 is not in the case, having been removed by stipulation of May 18, 1959, wherein the parties had stipulated:

1. That under date of February 1, 1956, plaintiff and Suffolk Farmers Co-operative Association, Inc. executed a written instrument of which a copy is annexed and made a part hereof.

Coen v. American Surety Co. of New York, 8 Cir., 120 F.2d 393, clearly expounds the law relating to the execution of instruments. The Court held (at page 397):

"The answer having put in issue the execution of the bond, the burden was upon the plaintiff to establish its execution by a preponderance of the evidence, and in sustaining this burden the plaintiff cannot be aided by presumption, but must establish every element of his case by relevant evidence. * * * Under these authorities the execution of a written contract includes three acts: (1) Signing and (2) unconditional delivery by the promisor and (3) acceptance by the promisee."

In Coen, the Court was citing Missouri law. The instant case involves New York law because New York was the place where the contract was to be performed; however, New York law is not dissimilar.

In Ross v. Ross, 233 App.Div. 626, at page 637, 253 N.Y.S. 871, at page 883, it was held:

"The law is too well settled to require the citation of many authorities that any deed or instrument, although fully executed, is without force or effect, until delivered. * * * *"

Ross makes it crystal clear that the word "executed" does not include delivery.

The issue before the Court is not whether the Co-op executed and de-

livered Exhibit 1 to the plaintiff but whether the plaintiff executed and delivered Exhibit 1 to the Co-op. Post testified that he instructed his secretary to mail the signed contract to the Co-op but his instructions to his secretary do not constitute proof that it had actually been mailed. In the absence of such proof the Court must find that the plaintiff has failed to prove the essential element of delivery. The intention of Post who claims he signed the agreement for the plaintiff to eventually mail Exhibit 1 is not sufficient. The terms of Exhibit 1 and especially paragraph 14 must be construed strictly against the plaintiff for it was its agreement and it was its language. The claim of the plaintiff that when Post, a division manager, signed the contract that was sufficient confirmation is untenable.

█ The defendants set up the additional defense numbered 5 that the plaintiff has failed and refused to pursue its remedy against the Co-op and others in that it has not commenced any action to establish its preference in the assignment for the benefit of creditors proceeding. The plaintiff had a legal right to commence this action.

A plaintiff can sue the directors in conversion without first asserting their remedy against the Co-op. See Mendelson v. Boettger, 227 App.Div. 167, 12 N.Y.S.2d 671, affirmed 281 N.Y. 747, 23 N.E.2d 554; Lippman Packing Corp. v. Rose, 203 Misc. 1041, 120 N.Y.S.2d 461, at page 464, holds:

"In a long list of cases it has definitely been held that the officers, directors and agents of a corporation are jointly and severally liable for torts committed on behalf of a corporation and the fact that they also acted on behalf of the corporation does not relieve them from personal liability."

and then reviews the authorities and precedents which lead to this holding.

█ Tort feasors are jointly and severally liable. While Armour filed a claim with the assignee claiming preference, it points out the difficulty in proving this preference in bankruptcy and sets forth further that there was not in the assignee's hands any fertilizer which the plaintiff could reclaim. With this the Court can agree and overrules defendants' defense numbered 5.

The case was long and protracted and plaintiff and defendants offered all the evidence they had and, because of this, the Court feels duty bound to decide all the issues involved in order to avoid a second trial or retrial.

█ The plaintiff has the burden of proving its cause of action by a fair preponderance of the evidence. The Court does not think it has sustained that burden in two respects. First, it has not sustained the burden of proving that the agreement, Exhibit 1, was in legal existence at the time the transactions complained of in the complaint took place. The Court bases its finding particularly on the fact that the plaintiff was duty bound under paragraph 14 of Exhibit 1 to not only confirm the agreement but to deliver the confirmed agreement to the Co-op. Ross v. Ross, supra. Secondly, assuming that even if this agreement, Exhibit 1, was in legal effect the plaintiff did not treat the transactions with the Co-op as being based on a consignment agreement. Counterwise, the proof strongly suggests that up until the time the Co-op was in financial straits the transactions between plaintiff and the Co-op were carried on in accordance with the custom and practice prevailing in the Suffolk County community, to wit, that the relationship between the parties was that of debtor and creditor. Because of this relationship of debtor and creditor existing between plaintiff and the Co-op there can be no recovery for a conversion of any assets allegedly belonging to the plaintiff. Title to these assets had passed to the Co-op.

Findings of fact, conclusions of law and a decree in accordance with this decision must be entered within twenty days.