**In re William K. McGRATH,
Bankrupt–Appellant.**

**Rebecca M. SEAVER,
Plaintiff–Respondent,**

v.

**William K. McGRATH,
Defendant–Appellant.**

**No. 79 Civ. 3518.**

United States District Court,
S. D. New York.

Aug. 6, 1980.

Herbert Adler, New York City, for plaintiff–respondent.

Ira H. Leibowitz, Garden City, N.Y., for defendant–appellant.

## MEMORANDUM OPINION

MOTLEY, District Judge.

William McGrath, appellant, has appealed to this court from a decision and order of the Bankruptcy Court (Schwartzberg, J.) holding that McGrath's liability for a sum of money procured from respondent, Rebecca Seaver, was not discharged under section 17(a)(2) of the Bankruptcy Act on the ground that McGrath obtained the money by fraud. Seaver had instituted an action against McGrath for fraudulent inducement.

McGrath was the president of Sound Yacht Basis, Inc. and Sound Yachts, Inc., its subsidiary, as well as the president and sole shareholder of Associated Management Services, Inc., the parent corporation of Sound Yacht Basin, Inc. The subsidiary, Sound Yacht, Inc., was engaged in the business of selling and distributing motor boats, sailboats and other types of nautical equipment. This corporation was the representative of several yacht manufacturers, including Endeavour Yacht Co.

In 1976, Seaver saw an advertisement of Sound Yacht, Inc. for the sale of a used 32 foot Endeavour Yacht. Seaver contacted the offices of Sound Yacht to purchase this boat and placed a deposit of $500.00 on the boat. After this point, Seaver informed McGrath that she wanted a new engine placed in the boat. McGrath advised her that such placement would be impracticable and suggested that she purchase a new model of the yacht with extra equipment and the type of engine she requested. The new yacht had a purchase price of $26,-951.00. McGrath informed Seaver that the quoted price would remain in effect for only a short time longer and stated that the price could be held only if an order were placed quickly. McGrath also stated that Seaver's chances of obtaining discounts on the yacht and equipment would be im-

proved in proportion to the amount of money advanced. Seaver testified that she relied on McGrath's statements that the money would be forwarded immediately to Endeavour for production of the yacht and purchase of equipment. Seaver delivered two checks for a total amount of $26,451.00. McGrath did not immediately transfer the funds to Endeavour, but instead placed the money in the tax escrow account of Sound Yachts. What ultimately occurred was that Seaver never received the yacht. Nor did she receive a refund of the $26,451.00 and the $500.00 deposit.

The Bankruptcy Court found that McGrath had obtained the money from Seaver by false pretenses. The court found that McGrath had represented to Seaver that he would deliver immediately the money to Endeavour. McGrath's deposit of the funds in the escrow account was sufficient evidence of his lack of intent to perform as requested in addition to an intent to deceive Seaver. The court further found that Seaver relied on this representation and was injured as a result of this representation. Finally, the court found that McGrath was personally liable for this fraud committed in the course of his official duties as a corporate officer.

Appellant challenges as clearly erroneous the findings of the Bankruptcy Court with respect to the issue of obtaining the money under false pretenses. The crux of his contention is that insufficient evidence of his intent to deceive Seaver was adduced at trial. Appellant also claims that mere non–performance of the contract to procure a boat for respondent Seaver does not as a matter of law give rise to an inference of fraud.

Appellant's argument is weak. Appellant contends that the allegedly false statement was his representation to Seaver that the contract would be performed, that is to say that he would obtain the new yacht for Seaver embellished with the request equipment. This representation, which is, in effect, a statement concerning McGrath's duty under the purchase contract, is not the

representation that was at issue in the bankruptcy proceeding nor was it the representation that was the basis for the finding of misrepresentation. Rather, the representation that Seaver relied on was McGrath's statement that he would immediately forward to Endeavour the entire amount of money to secure the yacht and its quoted discount price.

Appellant's argument that mere non–performance of a contract does not amount to fraud does not apply to the facts of the instant case.

Appellant also challenged the court's finding that McGrath had the requisite intent to deceive in that the mere placement of the money in an escrow account did not produce an inference that McGrath did not intend to perform his duties under the contract to procure the yacht. This claim is also weak. McGrath ignores the fact that he represented to Seaver that he would immediately forward the funds to Endeavour. Placing the funds in the escrow account clearly will support an inference that he did not intend to forward the funds immediately.

Respondent first contends that the court's findings of fact are clearly supported in the record and are, therefore, not clearly erroneous. McGrath's representation that he would make an immediate purchase of the yacht from Endeavour is supported by Seaver's testimony to the effect that McGrath informed her that her chances of purchasing the yacht at discount prices depended on the amount of money she gave to McGrath.

That Seaver relied on McGrath's statements, contends respondent, is amply supported by Seaver's testimony that in the absence of these representations, she would have paid only a down payment of ten percent of the purchase price.

Next, the finding that this representation was false and that McGrath knew it to be such finds support in the record. The record revealed that McGrath did not really require the entire amount of the purchase price as an advance payment insofar as Sound Yacht had a standing deposit with Endeavour that guaranteed production of the yacht and furthermore, at the time of the contract, the production slot for the yacht was available. Thus, it may be inferred from this financial arrangement that additional money over and above the ten percent down payment was unnecessary to guarantee the procurement of the boat.

The finding that McGrath had an intent to deceive is also to be inferred from the record. It was undisputed by the parties that McGrath deposited the money into an escrow account.

The Bankruptcy Court's findings are supported by the record and are not clearly erroneous. The remaining question is whether the Bankruptcy Court made any errors of law.

■ Respondent argues that the Bankruptcy Court applied the correct rules of law to the facts. In order to conclude, as a matter of law, that McGrath made a fraudulent representation to Seaver sufficient to render the debt non–dischargeable under section 17(a)(2) of the Bankruptcy Act, a court must establish that: 1) the debtor made representations; 2) the debtor knew these representations were false at the time they were made; 3) the representations were made with the intention to deceive the plaintiff; 4) plaintiff relied on the statements; 5) plaintiff was injured by these representations and suffered damages as a result. *Sweet v. Ritter Finance Co.*, 263 F.Supp. 540, 543 (W.D.Va.1967).

■ Each of the required elements has been established. The conclusions of law are therefore proper. Questions of scienter and intent are questions of fact. *In re Nelson*, 561 F.2d 1342, 1347 (9th Cir. 1977).

■ There is also an issue as to whether McGrath, the president of Sound Yachts, and the person who entered into this contract for the purchase of the yacht on behalf of the corporation, is personally liable for acts of fraud. It is well–settled that corporate officers are to be held accountable for fraudulent acts whether acting on behalf of the corporation or on their own

behalf. *Lippman Packing Corp. v. Rose*, 203 Misc. 1041, 120 N.Y.S.2d 461 (1953). McGrath, therefore, is liable for all fraudulent acts perpetrated in his capacity as president of Sound Yachts and, in particular, for his fraudulent representations to Seaver.

The decision and order appealed from are therefore affirmed.

So ordered.