In re Bradford and Susan ANDREWS,
Debtors.

MARTHA'S VINEYARD COOPERATIVE
BANK, Plaintiff,

v.

Bradford and Susan ANDREWS,
Defendants.

Bankruptcy No. 81–00843–JG.

Adv. No. 81–611.

United States Bankruptcy Court,
D. Massachusetts.

Oct. 28, 1983.

Edward M. Zinaman, Worth & Norton, Edgartown, Mass., for plaintiff, Martha's Vineyard Cooperative Bank.

John C. Stephenson, Braunstein & Cohen, Hyannis, Mass., for defendants/debtors.

MEMORANDUM

JAMES N. GABRIEL, Bankruptcy Judge.

The Complaint of the Plaintiff, Martha's Vineyard Cooperative Bank, ("the bank") seeks a determination that two unsecured loans totalling $3700 it granted the debtors, Bradford and Susan Andrews ("the debtors" or "the Andrews") are nondischargeable pursuant to 11 U.S.C. Section 523(a)(2)(B). A trial was held on November 16, 1982. Based upon the agreed facts, testimony and the documentary evidence the Court finds the following facts.

In May 1980 the debtor, Bradford Andrews, obtained a loan application from the bank to apply for a mortgage loan. The debtor, Susan Andrews, prepared the application dated August 29, 1980 which sought a mortgage loan of $45,000 on Lot 25 Canterbury Lane, Vineyard Haven, Massachusetts. On page one of the application the debtors checked off the question "are you buying?", indicated a purchase price of $12,000, and that they were "building". The testimony of the only bank employee to testify, Mrs. Conroy, was that the bank knew the Andrews owned the Canterbury Lane property and that the Andrews were building a home at this location. On the second page of the application the Andrews gave their current address as Greenwood Ave., Vineyard Haven, and indicated that they rented these premises. The application stated that Mr. Andrews' monthly income as a mason contractor was $2500 to $3000. The application listed a checking account at the "M.V. National Bank". The application did not request a statement of assets or secured debt. Rather, with respect to liabilities, the application only requested a list of "monthly obligations and open accounts". The Andrews listed total monthly obligations of $316.18, owed to four creditors—Ford Motor Credit, Sears, Alden's and Martha's Vineyard Cooperative Bank. The application was submitted to the bank and in early September, Mrs. Conroy notified Mr. Andrews that a loan of $45,000 would not be approved, but that a loan of $40,000 would be considered. She instructed him to submit a revised mortgage application, which was the same as the August 29 application, with two minor exceptions. The amended application listed monthly obligations as $230.54, and stated that Mrs. Andrews was employed with a monthly income of $3800. Although dated August 29, 1980, the revised application was submitted to the bank during the first week of September 1980, and it was processed through the bank's regular channels.

On October 8, 1980 the Andrews filed with the bank a personal loan application seeking $1000. The purpose of the loan was: "to pay construction workers and contractors who are building our house—balance of this loan to be paid off with mortgage". Similar to the mortgage loan application the personal loan application contained no space for a list of assets or encumbrances on property but merely requested a statement of monthly obligations. The only monthly obligation listed was $76.71 to the Martha's Vineyard National Bank. The bank approved the $1000 personal loan on October 16, 1980 and the debtors executed a ninety-day promissory note for $1043.75. On October 28, 1980 the Andrews applied for a second unsecured loan of $2700, stating as the purpose "to pay construction crew half of their total bill on our house". Mr. Noke, the bank loan officer, approved the loan and the Andrews signed a promissory note for $2818.13, which like the first unsecured loan, was payable in full in January 1981.

The bank employee, Mrs. Conroy, forwarded the second loan application to the loan officer, Mr. Noke, with a note stating that the Andrews were mortgage applicants. At trial, the Plaintiff did not call the approving loan officer as a witness, and therefore his basis for approving the loan is unknown. Mrs. Conroy testified that she believed the personal loans were granted in conjunction with the pending mortgage applications.

The bank's mortgage review board approved the Andrews' mortgage application on November 13, 1980, and forwarded the legal work to Worth and Norton.

On November 25, 1980 the bank received a letter from the law firm stating that their search revealed two mortgages on the Andrews' property and requesting pay-off figures.

At trial it was agreed that this search revealed that the Andrews had executed a mortgage to Miles Homes for $51,275.40 on June 9, 1980 which was recorded on June 24, 1980. The record further revealed that the Andrews had granted a purchase money mortgage for $10,000 to the sellers which was recorded on May 23, 1980. Neither mortgage was listed on any of the loan applications submitted to the bank. Mrs. Andrews testified that although she did not list the $10,000 mortgage to the sellers on the loan applications, she did inform Mrs. Conroy that the purpose of the mortgage was to pay the balance of the purchase price as sufficient to show the obligation to the sellers. The payment terms of the purchase money mortgage are unknown as it was not introduced into evidence. Mrs. Andrews explained that she did not list the mortgage to Miles Homes because she and her husband were unaware that Miles had a mortgage on the property. They had selected a pre-fabricated home from the Miles Homes catalog for a base price of $30,000, options being extra. They had executed a purchase contract with Miles, but the Andrews did not understand the document to be a mortgage. Miles delivered building materials to the site and construction began during summer 1980. The Andrews were not billed for the construction materials. According to Mrs. Andrews, they understood that their obligation was to pay a $6,000 finance charge to Miles nine months after signing the contract and that payment for the building materials was not required for three years. The Andrews did not learn of the Miles mortgage until they received a letter from the bank's attorney. The alleged Miles mortgage was not introduced into evidence and its payment terms are unknown.

Mrs. Andrews was unable to explain the Miles transaction with clarity. It is clear that both she and her husband were and are unsophisticated in real estate transactions. Mrs. Andrews testimony was related in a sincere and credible manner, and I find that she did not understand that she and her husband had granted a mortgage to Miles Homes. It is impossible to find that Mr. Andrews knew about the mortgages because the Plaintiff did not call him as a witness even though he was present in the court room on the day of trial.

The bank contends that it granted the unsecured loans in reliance on the three false financial statements which omitted the existence of the two mortgages.

█ The bank seeks to except its debt from discharge pursuant to Section 523(a)(2)(B) which provides: "a discharge does not discharge an individual debtor from any debt—for obtaining money, property, services or an extension, renewal or refinance of credit, by ... (b) use of a statement in writing (i) that is materially false; (ii) respecting the debtor's financial condition; (iii) on which the creditor to whom the debtor is liable for obtaining money, property, services or credit reasonably relied, and, (iv) that the debtor caused to be made or published with intent to deceive." The lender has the burden of proving each element of its claim under this section by clear and convincing evidence. *In Re Callery,* 6 B.R. 527, 529 (Bkrtcy.S.D. N.Y.1980).

There is no dispute that the loan applications submitted to the bank qualify as statements in writing concerning the debtors' financial condition.

█ The bank must demonstrate the financial statement was materially false, which means substantially untrue. *In Re Tomeo,* 1 B.R. 673 (Bkrtcy.E.D.Pa.1979). The amount omitted from debtors' statements—approximately $6100—clearly transformed the application into an untruthful representation of the Andrews' financial condition, and the financial statements omitting the two mortgages were materially false.

The bank is also required to prove that it actually and reasonably relied on the false financial statements. I am convinced that the bank actually relied on the three loan

applications in extending credit. The officer who approved the loan did not testify and there was no evidence presented concerning the basis for his decision. Mrs. Conroy's testimony concerning the basis for his decision is mere speculation as she did not play any part in the decision. In fact, given that she informed Mr. Nokes that the Andrews were loan applicants, it seems plausible that he approved the loan because they were potential mortgage customers of the bank. The plaintiff has failed to sustain its burden of demonstrating actual reliance.

 Even if I were to find that the bank actually relied on the financial statements, this reliance cannot be considered reasonable. Where a financial statement fails to solicit sufficient information to accurately portray an applicant's financial condition, the creditor cannot claim its reliance that the application was reasonable. *In Re Magnusson,* 14 B.R. 662, 8 B.C.D. 708, 710 (Bkrtcy.N.D.N.Y.1981). Here the application was so deficient it could not present an accurate picture of financial status. It fails to inquire into ownership of assets or encumbrances, such as mortgages. The bank's reliance on this inherently unreliable financial statement cannot be considered reasonable.

Finally the bank has also failed to demonstrate that the debtors intended to deceive it by submitting the false financial statement. Intent to deceive may be inferred where a person knowingly makes a false representation which the person knows or should know will induce another to make a loan. *In Re Valley,* 21 B.R. 674 (Bkrtcy.D.Mass.1982). The debtor's credibility is an important factor in determining whether the requisite intent to deceive was present in a transaction. *In Re McGrath,* 7 B.R. 496, 498 (Bkrtcy.S.D.N.Y.1980). A finding of intent to deceive is impermissible where a misrepresentation on a loan application was innocent and was caused by the deficiencies in the loan application itself. *In Re Magnusson,* 14 B.R. 662, 8 B.C.D. 708 (Bkrtcy.N.D.N.Y.1981).

Here the omission of the two mortgages by Mrs. Andrews, the preparer, cannot be considered intentionally deceptive. The application did not contain space for listing mortgage obligations. Moreover, I believe Mrs. Andrews' testimony that she informed the bank employee about the remaining balance of the purchase price. I also find that Mrs. Andrews did not understand the transaction with Miles Homes and that she and her husband did not understand that Miles had a mortgage on the property. The bank presented no evidence from which I could find that Mr. Andrews knew about the mortgages.

The Plaintiff having failed to meet its burden of proof on the elements of Section 523(a)(2)(B) of the Bankruptcy Code, it is therefore ordered that the debt of the debtors to the Plaintiff as evidenced by loans dated October 16, 1980 and October 28, 1980 are discharged and judgment shall enter for the Defendants in this adversary proceeding.