KORHUMEL STEEL CORPORATION, Plaintiff-Respondent,†

v.

Angie WANDLER, Defendant-Appellant.

Court of Appeals

*No. 98–2042. Submitted on briefs April 26, 1999.—Decided July 14, 1999.*

(Also reported in 600 N.W.2d 592.)

†Petition to review denied.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Alan E. Korpady* and *Patrick F. Jennings* of *Tylicki, Witkowiak, Connors & Jennings, S.C.* of Greenfield.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Harvey Jay Goldstein* of *Stupar, Schuster & Cooper, S.C.* of Milwaukee.

Before Snyder, P.J., Anderson and Wilk,[1] JJ.

WILK, J.   This case concerns the scope of protection extended by § 403.402(3), STATS., of the Uniform Commercial Code to one signing a corporate check in a representative capacity. That section mandates that a representative signer is "not liable on the check." *Id.*[2] Here, the payee brought a fraud claim against a corporate bookkeeper. The question on appeal is whether § 403.402(3) shields the representative from liability in an action for fraud when such actions are expressly preserved by § 401.103, STATS.[3] We conclude that it does not. Here, however, the payee failed to prove the elements of fraud by clear and convincing evidence. We reverse.

The case revolves around two checks from Contour Tool & Stamping, Inc. to Korhumel Steel Corporation. Korhumel supplied steel to Contour on an open-credit basis. In May 1997, Contour began experiencing financial difficulties and exceeded its credit limit with Korhumel. A Korhumel representative, Gary Biwerski,

---

[1] Circuit Judge S. Michael Wilk is sitting by special assignment pursuant to the Judicial Exchange Program.

[2] Section 403.402(3), STATS., reads:

> If a representative signs the name of the representative as drawer of a check without indication of the representative status and the check is payable from an account of the represented person who is identified on the check, the signer is not liable on the check if the signature is an authorized signature of the represented person.

[3] Section 401.103, STATS., reads:

> **Supplementary general principles of law applicable.** Unless displaced by the particular provisions of chs. 401 to 411 the principles of law and equity, including the law merchant and the law relative to capacity to contract, principal and agent, estoppel, fraud, misrepresentation, duress, coercion, mistake, bankruptcy, or other validating or invalidating cause shall supplement its provisions.

went to Contour's place of business to collect payment for previously delivered steel. There he met with Dan Wandler, the sole shareholder and president of Contour.[4] During the visit, Dan wrote out a check (check #1) for $5668.50. He instructed Angie Wandler (Wandler), the company's bookkeeper, to sign check #1, which she did. Wandler testified that Dan then gave check #1 to Biwerski. The second check (check #2) was both written and signed by Wandler. Check #2 was for $9789.57. Wandler testified that she gave check #2 to Biwerski. Biwerski could not recall, for either check, whether Wandler or Dan gave him the check. Both checks were returned to Korhumel for insufficient funds in Contour's account. Korhumel then brought this action against Wandler, originally alleging non-payment on both checks and fraud on check #2. The complaint was amended at trial to allege fraud on both counts. The trial court entered judgment for Korhumel, finding that Wandler had committed fraud with regard to both checks and that she was personally liable for damages.

While Wandler challenges the trial court's ruling on several grounds, we address only those we find dispositive. *See Sweet v. Berge*, 113 Wis. 2d 61, 67, 334 N.W.2d 559, 562 (Ct. App. 1983). We consider two questions. First, does § 403.402(3), STATS., shield a corporate bookkeeper from liability in an action for fraud? Second, if it does not, has Korhumel met its burden in proving the elements of fraud? We address each in turn.

---

[4] Dan Wandler also happens to be Angie Wandler's son. Despite the trial court's emphasis on this familial relationship, we deem it to be of no relevance to this case.

*Protection from Liability for Fraud for Representative Signer Under § 403.402, STATS.*

While § 403.402(3), STATS., protects those signing checks in a representative capacity from liability, § 401.103, STATS., expressly preserves fraud claims to supplement the Uniform Commercial Code unless they conflict with code provisions. Cases where a fraud claim has been held to conflict with the code usually have arisen under article two of the U.C.C. For example, in *Custom Communications Engineering, Inc. v. E.F. Johnson Co.*, 636 A.2d 80 (N.J. Super. Ct. App. Div. 1993), a dealer brought an action against a manufacturer for damages arising from the termination of the dealership agreement, alleging breach of contract as well as various tort claims, such as tortious interference with contract. *See id.* at 85. Despite the longer statute of limitations for nonarticle two claims, the appellate court held that all claims against the manufacturer were time-barred. *See id.* at 83, 85.

> The counts sounding in tort derive exclusively from the allegations and facts underlying the breach of contract claim, and thus should not be considered separate claims for statute of limitation purposes. . . . A transaction should not be removed from the ambit of the UCC to the area of tortious conduct simply by making general allegations of fraud: otherwise the form of the pleading could negate the purpose and force of [the UCC's limitation period].

*Id.* at 85. Thus, plaintiffs could not dress up their article two contract claim in tort garb to avoid the article two statute of limitations. *See also Hapka v. Paquin Farms*, 458 N.W.2d 683, 688 (Minn. 1990) (holding that UCC remedies are exclusive in defective product case

involving property damage only, despite allegations of misrepresentation).

We are not persuaded that this is the type of case where "the tort claims and contract claim are indistinguishable" and thus the tort claim is barred. *See AKA Distrib. Co. v. Whirlpool Corp.*, 948 F. Supp. 903, 907 (D. Minn. 1996), *aff'd*, 137 F.3d 1083 (8th Cir. 1998). The article two cases are based on the premise that, in a commercial transaction, the parties are experienced, negotiating at arm's length, and able to identify all the risks involved in a transaction and include them in the purchase price. *See Hapka*, 458 N.W.2d at 688. It undermines the purpose of·the code—uniformity and certainty—to allow the purchaser of a defective widget to heap tort remedies on top of the warranties provided under article two. We recognize that a check is a type of contract. However, this fraud claim, which happens to involve a check, is not "indistinguishable" from an article three claim for payment on a check. *See, e.g.,* §§ 403.414 ("Obligation of drawer"), 403.501–.505 ("DISHONOR"), STATS. Fraud has distinct elements, including scienter and reliance.

Case law from other jurisdictions reinforces our belief that corporate signers of checks who sign checks when they know the corporate accounts contain insufficient funds may be liable, despite § 403.402(3), STATS. For example, in *Lippman Packing Corp. v. Rose*, 120 N.Y.S.2d 461, 463 (N.Y. Mun. Ct. 1953), the president of a corporation wrote a check to a supplier in order to get the supplier to deliver more goods. *See id.* at 462. The court found actionable fraud.

> One who, with knowledge that there are insufficient funds in the account upon which it is drawn, draws and delivers a check as in the instant case, commits

actionable fraud when the check is given for the purpose of inducing the sale of further merchandise on credit and it is unnecessary that the defendant benefit from the fraud, or that the account on which the check is drawn be in the name of the defendant. In short, it is sufficient if the defendant, as an officer of the drawer corporation, draws a check, makes delivery, knowing the check is "bad" or will be dishonored on presentation, delivers it for the purpose of inducing plaintiff to rely on the inherent representations.

*Id.* at 463. The court distinguished an ordinary commercial transaction from one involving wrongdoing, noting that individual liability is appropriate when an intentional tort is alleged and proven. *See id.* at 464; *see also* John D. Perovich, Annotation, *Personal Liability of Officers or Directors of Corporation on Corporate Checks Issued Against Insufficient Funds*, 47 A.L.R.3d 1250 (1973 & Supp. 1998).

The conclusion that § 403.402(3), STATS., offers no protection from fraud claims is bolstered by cases holding that the section does not protect individuals from civil liability under bad check statutes. *See Mountain States Commercial Collections, Inc. v. 99 cents Liquidators, Inc.*, 940 P.2d 934 (Colo. Ct. App. 1996). In *Mountain States*, the debtor corporation bought goods from Concord, the assignor of the plaintiff, on an open account. *See id.* at 935. In partial payment of the balance, a corporate officer signed corporate checks that were returned for insufficient funds. *See id.* at 935–36. Concord sued for damages under Colorado's bad check statute. *See* COLO. REV. STAT. ANN. § 13–21–109 (West 1999). The trial court found the corporate officer liable on one of the returned checks, even though no evidence

of fraudulent intent was presented.[5] *See Mountain States,* 940 P.2d at 936, 937. In affirming this portion of the judgment, the court of appeals noted that the statute did not provide any exceptions to liability, and cited COLO. REV. STAT. § 4–3–403(2)(b) (1992)[6] to demonstrate that the legislature can and does limit liability in some circumstances. *See Mountain States,* 940 P.2d at 937–38. The dissent concluded that the officer should be protected under § 4–3–403(2)(b) when there was no evidence of intent to defraud. *See id.* at 938. We see this last element as key. Intent is what distinguishes a fraud claim against a corporate signer, which survives under § 401.103, STATS., from a mere action on the check, from which a corporate signer is protected by § 403.402(3). Because Korhumel has alleged an intentional tort, Wandler cannot find refuge under § 403.402(3).

### *Proof of Fraud*

■

As § 403.402(3), STATS., does not protect Wandler from liability for fraud, we must examine whether fraud was proved in this case. While the weighing of evidence and the determination of witness credibility are questions within the discretion of the trial court, *see Lellman v. Mott,* 204 Wis. 2d 166, 172, 554 N.W.2d

[5] Unlike Wisconsin's bad check statute, *see* § 943.24, STATS., Colorado's bad check statute does not require knowledge or reckless disregard that there are insufficient funds in the account. *See* COLO. REV. STAT. ANN. § 13–21–109 (West 1999).

[6] This is Colorado's version of our § 403.403(2)(b), STATS., 1993–94, the predecessor to the present § 403.402(3), STATS. *See* 1995 Wis. Act 449, § 9; WIS. STAT. ANN. § 403.402 cmt. 2 (West Supp. 1998); U.C.C., Revised Art. 3 Prefatory Note, 2 U.L.A. 10 (1991).

525, 527 (Ct. App. 1996), whether a party has met his or her burden of proof is a question of law we review de novo, *see Spindler v. Spindler*, 207 Wis. 2d 327, 338, 558 N.W.2d 645, 651 (Ct. App. 1996).

To show fraud, the plaintiff must establish three elements. *See Lundin v. Shimanski*, 124 Wis. 2d 175, 184, 368 N.W.2d 676, 680–81 (1985). First, there must be a knowingly false representation of fact. *See id.* at 184, 368 N.W.2d at 680. Second, the representation must be made with intent to defraud and for the purpose of inducing another to act upon it. *See id.* Third, the other person must rely on the representation and be induced by it to act, causing his or her own injury or damage. *See id.* at 184, 368 N.W.2d at 680–81. The actor's reliance on the representation must be justifiable. *See Loula v. Snap-On Tools Corp.*, 175 Wis. 2d 50, 54, 498 N.W.2d 866, 868 (Ct. App. 1993). Finally, "[t]he party alleging the fraud has the burden of proving the elements by clear and convincing evidence." *Lundin*, 124 Wis. 2d at 184, 368 N.W.2d at 681.

■ With respect to check #1, there is no evidence in the record to support a finding that Wandler knew there were insufficient funds in the account when she signed check #1. Wandler testified that there were sufficient funds in the account when she wrote check #1. There was lengthy testimony from a bank employee regarding the status of Contour's checking account on May 5, the date check #1 was written. He testified that at the beginning of the day on May 5 there was a balance of $10,895.29, and at the end of the day there was a balance of $2615.18. However, due to some checks that cleared on that day, the bank employee opined that "[t]here could not have been sufficient funds in the account" to cover check #1. But later he testified that

"[b]ased on the amount available in the account as of the beginning of the day, that amount would have been sufficient to cover [check #1]." There was no other evidence presented to show that Wandler knew check #1 was bad when she wrote it. Given her testimony that she did not know there were insufficient funds, and the bank employee's testimony that there were sufficient funds in the account at the start of the day, we hold that Korhumel did not prove by clear and convincing evidence that Wandler knowingly made a false representation when she signed check #1.

In contrast to her testimony regarding check #1, Wandler admitted that she "was fully aware" that there were not sufficient funds in the account to cover check #2. Furthermore, she conceded that "the payment of this check was a condition of additional steel being delivered." But, in order to show fraud, Korhumel must also show that it relied on Wandler's representation when she wrote and signed check #2 and that this reliance was justifiable. It is here where we part company with the trial court regarding its ruling on check #2.

██
If Korhumel's agent did in fact rely on Wandler's signature as a representation that the corporation was solvent, such reliance was not justifiable. Wandler was not an officer or director of the corporation. The record does not disclose that she was involved in any negotiations with Korhumel about the amount of available credit, the release of new shipments of steel or how large check #2 had to be to secure additional shipments. *Cf. Lippman Packing*, 120 N.Y.S.2d at 462–63 (finding actionable fraud where president of corporation, who was also actively engaged in the management thereof, drew and delivered bad check to meat supplier

404

to induce further delivery of meat). Wandler was merely a scribe—the general manager told her to write check #2 to Korhumel and she did so. While we recognize that the general rule is that an agent is liable for misrepresentations even though they are made on behalf of the principal, *see Stevenson v. Barwineck*, 8 Wis. 2d 557, 561, 99 N.W.2d 690, 692 (1959) (quoting RESTATEMENT (SECOND) OF AGENCY § 348 (1958)), our focus here is on Wandler's position as it relates to Korhumel's reliance on her representations. We hold that, given Wandler's low-ranking position in the corporation, Korhumel's reliance on Wandler's signature as a representation that check #2 would clear was not justifiable. Korhumel did not meet its burden of proof regarding check #2.

### Conclusion

Section 403.402(3), STATS., does not shield a representative signer from claims of fraud in signing a corporate check. However, in this case, Korhumel did not present sufficient evidence to clearly and convincingly prove fraud.

*By the Court.*—Order reversed.